**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Claudell Martine WHITE and Phillip White, Defendants-Appellants.**

**No. 77–5180.**

United States Court of Appeals,
Fifth Circuit.

March 8, 1978.

Rehearing Denied April 26, 1978.

Joseph (SIB) Abraham, Jr., Charles Louis
Roberts, El Paso, Tex., for Claudell White.

David R. Rosado, Woodrow W. Bean, II, El Paso, Tex., for Phillip White.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., Frank B. Walker, El Paso, Tex., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

Phillip and Claudell White, husband and wife, appeal their convictions on heroin charges. Both were convicted by a jury of conspiracy to possess heroin with intent to distribute in violation of 21 U.S.C. § 846, and Phillip also was found guilty of a substantive count of heroin possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Each received a fifteen-year sentence and fifteen-year special parole term for conspiracy, and Phillip received an additional six-year sentence, to be served consecutively, for the substantive offense.

Both challenge the conspiracy convictions on grounds of insufficient evidence. Claudell also claims certain prejudicial testimony was erroneously admitted, and Phillip asserts that the district court should have granted his motion for severance. Phillip also makes a "chain of custody" argument in challenging his substantive conviction. We agree that the conspiracy convictions must be reversed because of insufficient evidence; and accordingly need not address the other issues; however, we affirm Phillip's conviction for the substantive offense.

## I. FACTUAL BACKGROUND

These convictions were obtained largely through the efforts of two undercover agents for the Drug Enforcement Administration, Widener and Wendt, who worked closely with a confidential informant. The agents were initially led to the Whites by one Cornelius Braxton, who was indicted and tried along with the Whites. He arranged a deal between the agents and Claudell for July 21, 1976, in an El Paso bar. Another person—a "John Doe"—also was involved, but the deal never took place because of a nearby burglary that brought several uniformed police into the vicinity. According to Agent Widener, this aborted transaction involved marijuana.

About a month later, on August 31, a confidential informant named Oatis Leeper was instructed by the agents to try to make a heroin buy from either Claudell or Braxton. Leeper met one Larry Williams, a co-defendant who was acquitted of conspiracy, in another bar and discussed a possible purchase. From this conversation Leeper concluded that Williams was selling for Claudell, and he later bought a half-gram of heroin from Williams. On September 3 and 4, Leeper purchased small quantities of heroin from Phillip and discussed the possibility of selling for him.

Leeper met with Phillip again on September 7. Later in the day, during a ride in Claudell's van, he discussed with her the possibility of dealing heroin. According to Leeper, Claudell thought he was right for the job but said that "things were kind of hot and she couldn't afford it at the time." Phillip was not present during this conversation, and Claudell had not participated in any of Phillip's "negotiations" with Leeper. The next day Leeper again discussed dealing with Claudell, but she repeated that she could not afford to have him deal for her.

Although DEA agents conducted extensive surveillance during this period, the only direct testimony concerning the alleged conspiracy came from informant Leeper.

## II. THE SUBSTANTIVE OFFENSE

The basis of this count against Phillip was Leeper's purchase on September 4. Phillip contends that there was not an adequate chain of custody regarding the heroin that the DEA agents took from Leeper after the buy had been made. He relies on the fact that the agents did not personally observe the transaction and that Leeper could possibly have obtained the heroin from another source.

This is not a routine chain of custody situation in which the chain is broken between seizure of the evidence from the accused and a subsequent trial. Rather, the alleged break occurred before the government came into possession of the heroin.

■ The more typical chain of custody cases make clear that the mere possibility of a break in the chain does not render the physical evidence inadmissible, but raises the question of the weight to be accorded by the jury to the sufficiency of the proof of a chain of custody. *United States v. Ellis*, 547 F.2d 863 (5 Cir. 1977); *United States v. Vansant*, 423 F.2d 620 (9 Cir. 1970). We apply the same rule in the instant case.

■ Here the alleged break is that government agents did not witness the deal's consummation. Moreover, there is nothing in the record indicating that marked bills supplied by the government were found in Phillip's possession after the sale. *Compare United States v. Amaro*, 422 F.2d 1078 (9 Cir. 1970). Nonetheless, Leeper's testimony supplies the missing link in the chain, since he testified that he purchased the drugs from Phillip. Leeper's credibility on this point is an issue for the jury, as would also be the case had an undercover government agent, rather than an informant, made the buy.

Allowing the informant's testimony to supply the missing link is no different than allowing connection of physical evidence with a defendant to be shown by circumstantial evidence. *See United States v. Turner*, 528 F.2d 143 (9 Cir.), *cert. denied*, 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975); *United States v. Snow*, 517 F.2d 441 (9 Cir. 1975). In these cases proof of the connection goes to the weight of the physical evidence rather than its admissibility.

We thus find Phillip's argument without merit and affirm his conviction for the substantive offense.

## III. THE CONSPIRACY

■ Having unsuccessfully moved for a judgment of acquittal in the district court, Phillip and Claudell now urge that the evidence was insufficient to support their conspiracy convictions. The question is whether the evidence, viewed in a light most favorable to the government, could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of defendants' guilt beyond a reasonable doubt. *United States v. Warner*, 441 F.2d 821 (5 Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971); *United States v. Prout*, 526 F.2d 380 (5 Cir. 1976). Whether the evidence is direct or circumstantial, the test is whether the jury "could reasonably, logically, and legally infer from the evidence presented that appellant was guilty . . . beyond a reasonable doubt." *United States v. Bright*, 541 F.2d 471, 476 (5 Cir. 1976); *United States v. Smith*, 546 F.2d 1275, 1283–84 (5 Cir. 1977).[1]

■ The essential elements of a conspiracy are an agreement by two or more persons to commit an offense against the United States and an overt act by one of them in furtherance of the conspiracy. *United States v. Warner, supra; United States v. Isaacs*, 516 F.2d 409 (5 Cir.), *cert. denied*, 423 U.S. 936, 96 S.Ct. 295, 46 L.Ed.2d 269 (1975); *United States v. Barrerra*, 547 F.2d 1250 (5 Cir. 1977). However, in conspiracy prosecutions under 21 U.S.C. § 846, there apparently is no need to allege or prove overt acts. *See United States v. Palacios*, 556 F.2d 1359, 1364 n. 9 (5 Cir. 1977). The instant case does not require us to delve into this issue.[2] While

1. Other decisions phrase the test as whether a reasonably-minded jury could find the evidence inconsistent with every hypothesis of innocence. *E. g., United States v. Prout, supra; United States v. Moore*, 505 F.2d 620 (5 Cir. 1974). The differences in the two tests are merely semantical. *United States v. Smith, supra* at 1284 n. 3.

2. Several Fifth Circuit cases have confused the situation, having proceeded on the assumption that an overt act must be alleged and proved under § 846 and its companion statute dealing with conspiracy to import drugs, 21 U.S.C. § 963, just as under the general conspiracy statute, 18 U.S.C. § 371. The problem is discussed in *United States v. Palacios, supra* (citing cases).

no formal agreement or direct evidence is necessary to establish a conspiracy, there must be proof beyond a reasonable doubt that a conspiracy existed, that the accused knew it and, with that knowledge, voluntarily joined it. *United States v. Bright*, 550 F.2d 240 (5 Cir. 1977); *United States v. Gutierrez*, 559 F.2d 1278 (5 Cir. 1977). This court has also emphasized that "[p]roof of an agreement to enter into a conspiracy is not to be lightly inferred." *United States v. Johnson*, 439 F.2d 885, 888 (5 Cir.), *cert. denied*, 404 U.S. 880, 92 S.Ct. 213, 30 L.Ed.2d 161 (1971).

The difficulty in the instant case lies in proving the existence of a conspiracy. The government's theory apparently[3] is that Phillip and Claudell were involved in a heroin conspiracy because: (1) Claudell sells heroin; (2) Phillip sells heroin; and (3) they are married. This theory cannot withstand careful scrutiny.

Evidence of the conspiracy's existence is, to put it charitably, minimal. DEA Agent Widener testified that co-defendant Braxton identified the Whites as his "connection" and arranged a "buy" on July 21, though this transaction—which involved marijuana rather than heroin—was aborted. Informant Leeper testified that he had met with co-defendant Williams on August 31 and that Williams said he was "in the bag," which Leeper interpreted as meaning Williams was selling heroin for Claudell. On September 3 and 4, Leeper purchased heroin from Phillip and discussed with him

the possibility of Leeper's becoming a dealer. Leeper had similar discussions with Claudell on September 7 and 8. Claudell and Phillip are married; they live together and frequent the same bar, which one of them apparently owns or manages. These bits and pieces of evidence add up to no more than ground for conjecture and suspicion that a conspiracy existed, not proof beyond a reasonable doubt. *See United States v. Palacios*, 556 F.2d 1359, 1365 (5 Cir. 1977).

It is clear that Braxton's statement is co-conspiratorial hearsay and is not admissible to prove the existence of the conspiracy. *United States v. James*, 510 F.2d 546 (5 Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975); *United States v. Snyder*, 505 F.2d 595 (5 Cir. 1974), *cert. denied*, 420 U.S. 993, 95 S.Ct. 1433, 43 L.Ed.2d 676 (1975). The test is whether other evidence, without the hearsay, would establish a prima facie case of the conspiracy and the defendants' participation therein. *United States v. Rodriguez*, 509 F.2d 1342 (5 Cir. 1975); *United States v. Oliva*, 497 F.2d 130 (5 Cir. 1974). Leeper's testimony regarding Williams suffers from the same infirmity and contains another flaw as well. Leeper's explanation of the term "in the bag" constitutes an impermissible interpretation of what Williams said. *DeLoach v. United States*, 113 U.S.App.D.C. 316, 307 F.2d 653 (1962); *United States v. Jansen*, 475 F.2d 312 (7 Cir.), *cert. denied*, 414 U.S. 826, 94 S.Ct. 130, 38 L.Ed.2d 59 (1973).[4]

**3.** We say "apparently" because the government's brief on this question is woefully inadequate. Discussion of this issue, which is central to the case, occupies only two pages of the government's brief and consists largely of string citations to basic conspiracy principles. No references to the record are provided. We hope that, in the future, the government will respond more precisely to the issues.

**4.** In other cases, witnesses have been allowed to explain their understanding of terms or phrases, but under circumstances radically different from those in the instant case. For example, in *United States v. Cioffi*, 493 F.2d 1111 (2 Cir.), *cert. denied*, 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974), the defendant was charged with obstruction of justice by attempting to influence a witness, whose under-

standing of the words as threats was obviously important. Moreover, the court noted that the jurors probably understood the terms anyway. In *United States v. Borrone-Iglar*, 468 F.2d 419 (2 Cir. 1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1973), the court held it was proper to permit a police detective to explain the meaning of the narcotics vernacular used in telephone conversations involving the defendant. This, however, is a far cry from allowing testimony that "in the bag" or "in the pocket" means not only that someone is selling heroin but also that he is selling for a particular person.

We also note that the prosecutor emphasized this testimony in closing argument, stating at one point that "williams stated that he was selling heroin for Claudell Martin White." Tr.

■ Moreover, it is well-settled that a conspiracy cannot be proven solely by family relationship or other types of close association. *United States v. Palacios, supra; United States v. Ritz*, 548 F.2d 510 (5 Cir. 1977); *United States v. Duckett*, 550 F.2d 1027 (5 Cir. 1977). Mere similarity of conduct among various persons and the fact that they have associated with or are related to each other do not establish the existence of a conspiracy.

The only evidence of the conspiracy, then, is Phillip's sale of heroin to Leeper and Leeper's separate conversations with Claudell and Phillip regarding his possible participation in the "business" as a dealer. Drug transactions alone do not constitute a conspiracy, and it would be an exercise in sheer speculation to conclude from Leeper's account of his discussions with Phillip and Claudell that a heroin conspiracy existed. Although such speculation may be reasonable, it does not constitute proof beyond a reasonable doubt. As we said in *United States v. Palacios, supra* at 1365, "[ j ]uries must not be permitted to convict on suspicion and innuendo."

■ Nor is a conspiracy shown to exist between Phillip, Claudell, and the other alleged co-conspirators. The only connection between the Whites and Braxton was the first arranged "deal" on July 21, which fell through when police were summoned in response to a nearby burglary. Although success of the conspiracy is not required, *United States v. Villarreal*, 546 F.2d 1145 (5 Cir. 1977), the substance involved in the transaction must be the same illegal substance alleged in the indictment. *United States v. Murray*, 527 F.2d 401 (5 Cir. 1976). This "deal" involved marijuana, not heroin. Co-defendant Williams was, somewhat surprisingly, found not guilty,[5] and thus drops out of the picture as a possible co-conspirator.

That leaves only "John Doe," who, like Braxton, was involved only in the aborted marijuana transaction. Leeper, the government informant, cannot be a co-conspirator. *Sears v. United States*, 343 F.2d 139 (5 Cir. 1965).

■ Because determination of a defendant's guilt rests exclusively with the jury, *United States v. Black*, 497 F.2d 1039, 1041 (5 Cir. 1974), we are reluctant to disturb that determination on appeal. That does not mean, however, that a jury verdict of guilty must be affirmed in all circumstances. *United States v. Lange*, 528 F.2d 1280, 1287 (5 Cir. 1976). It is a cardinal principle that no person should be subjected to punishment unless the evidence shows beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged. *United States v. Jackson*, 426 F.2d 305, 309 (5 Cir. 1970). If the evidence does not meet this standard, the defendant must be acquitted. *McWhorter v. United States*, 193 F.2d 982, 985 (5 Cir. 1952). Although we do not lightly overturn a jury's finding, we do so here in fulfilling our responsibility to "guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Estelle v. Williams*, 425 U.S. 401, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976). Accordingly, the conspiracy convictions of Phillip and Claudell White are reversed.

## IV. CONCLUSION

Phillip White's conviction for possession of heroin with intent to distribute is affirmed. His conviction for conspiracy to so possess heroin is reversed, as is the conviction of Claudell White for the same offense. We remand the case to the district court

---

448. Actually, Williams said nothing of the sort, for Leeper *interpreted* "in the bag" to mean that Williams was selling for Claudell. Had Leeper been specifically asked whether Williams told him he was selling for Claudell, the answer might well have been a negative one. Indeed, this was the case when a similar question was posed to Leeper about his conversation with Braxton. Tr. 38–39.

5. Our surprise stems from the heavy reliance placed by the prosecution on Leeper's "in the bag" explanation that Williams was selling heroin for Claudell. *See* note 4, *supra*, and accompanying text.

with directions that the indictment be dismissed as to the conspiracy count.[6]

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**6.** Since *United States v. Musquiz*, 445 F.2d 963 (5 Cir. 1971), the usual practice of this court in connection with reversals for insufficient evidence has been to remand with directions for a new trial if a motion for new trial was made in the district court. In the instant case, appellants moved for a judgment of acquittal and, in the alternative, for a new trial. However, we conclude that the prosecution has had the opportunity to fully develop its case and that no purpose would be served by remanding for a new trial. *United States v. Peterson*, 488 F.2d 645, 651 n. 14 (5 Cir. 1974); *United States v. Brumley*, 560 F.2d 1268, 1277 (5 Cir. 1977).