UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward ROZEN, Defendant-Appellant.

No. 78–5238.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1979.

Ronald A. Dion, Alvin E. Entin, North Miami Beach, Fla., for defendant-appellant.

Kathrine L. Henry, William H. McAbee, II, Asst. U.S. Attys., Savannah, Ga., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and HILL, Circuit Judges:

GODBOLD, Circuit Judge:

Appellant, Edward Rozen, was convicted by a jury of conspiracy to possess marijuana with intent to distribute and possession with intent to distribute. Because there was insufficient evidence against appellant we hold that his motion for judgment of acquittal should have been granted and reverse with directions to enter a judgment of acquittal.

Law enforcement officers brought under surveillance several persons, several vehicles and a boat in a sizeable area of the Georgia coast. Much of the evidence was introduced to show that a conspiracy was in progress, but most of its need not be recited here. There was adequate evidence to show that a conspiracy was in progress, but the evidence failed to sufficiently connect appellant to it and failed to show possession by appellant.

Stated most favorably to the government, the following is all of the evidence that relates to appellant. Appellant's brothers

Gerald and David were together in the Brunswick, Georgia area August 23–25, 1977, Gerald with a Ford pickup truck, David with a GMC pickup with camper body. On the evening of August 25, David, accompanied by a woman, left Brunswick in the GMC, which was registered to him, and drove to Savannah, where he arrived at a motel sometime before 10:00 p.m. and registered. Gerald, in the Ford and accompanied by his six or seven year old son, left Brunswick later than David, drove to the same motel in Savannah, and entered a room. Soon thereafter, around 10:30 to 10:45, either two or three men emerged from the motel; one surveilling officer said one man got in each truck, another said one got in the Ford and two in the GMC. The one who entered the Ford was identified as Gerald. The one, or two, who entered the GMC were not identified.

The two trucks left the motel together and were followed to the Red Bird Creek area, a wooded area to which there was access by boat and where there was a dock. There the trailing officers lost the trucks. Around 1:30 a.m. officers saw the Ford pull out of a dirt road in the wooded area at a high rate of speed. They stopped it, found it occupied by Gerald, and discovered bales of marijuana in the back (later established as approximately 1,460 pounds). About three tenths of a mile from where the Ford had emerged the officers found the GMC with no one in it but containing marijuana bales (some 1,720 pounds). Later officers found in the GMC a notebook with a list of numbers (inferentially the numbers and the weights of the marijuana bales in the trucks) similar to another list found in the wallet of a co-conspirator who had been aboard the surveilled boat.

Georgia prison officials were called, and a dog handler came with his bloodhound Clyde. Around 4:00 a.m. Clyde made a circle around the truck, and, according to the handler, picked up a scent and followed it without ever losing it. In the process officers had to swim two canals that were over their heads. Presumably Clyde picked up the scent on the other side each time. At some point, not described, the dog handler saw two sets of tracks (footprints) going along together. After some three to four hours, and three to four miles from where the GMC was found, Clyde and the officers found brother David and appellant asleep under a tree. They had with them one flashlight and two pair of gloves. When they were brought out of the woods the shirt of one of them was torn and both were wet and bore some scratches.

The dog handler was unable to testify, or give an opinion, whether Clyde was following the scent of one person found under the tree, or the other person, or both persons.

From reading the entire record this is all the evidence we can find relating to appellant.[1]

This is not enough to submit to the jury as tending to show that appellant joined in the conspiracy, or that he possessed marijuana. He was discovered in the woods with his brother, three to four miles from the truck owned by the brother, some five to six hours after the truck was discovered unmanned and loaded with marijuana. The truck had last been seen with an identified occupant in it some 12 hours earlier when Gerald drove it into the Savannah motel and registered. Some male drove it from the motel, and a jury could find that he was accompanied by a male passenger, but neither person was identified as Gerald or as appellant. Appellant's first, last and only appearance in the wide spectrum of activities was when he was found and arrested. Until that moment no one identified him as in the company of either of his brothers. No one saw him in either vehicle. No one saw him at the marina where the suspect boat came and went, or on or about the boat. None of his belongings were found at any place. The notebook found in the GMC was not connected to appellant nor the writing in it shown to be his. No fingerprints connected him to vehicles, boat, or to any location. He neither rented nor bought

1. In a burst of over-enthusiasm the government states as fact that the three brothers met at a motel. We find no evidence placing appellant at any motel.

any boat, vehicle, or motel room. No marijuana was found on him, nor any visible evidence of burlap that might have come from coverings of the bales. He was not shown to have any relationship, familial or acquaintanceship, with any one in the conspiracy beyond his relationship with Gerald and David and his presence with David when found in the woods.

We do not speculate whether the motion for judgment of acquittal would have to be granted if there had been sufficient evidence tending to show that appellant had been in the GMC.[2] The only evidence even tending to show appellant's presence in the truck was Clyde's pursuit of a scent from near the truck to the sleeping brothers. The only connecting factor is Clyde's nose, and no one can do any more than guess whether Clyde was following the scent of David, the scent of appellant, or the scent of both. In this respect the case is similar to *U. S. v. Reyes*, 595 F.2d 275 (CA5, 1979). There, four Spanish-speaking aliens were discovered aboard an airplane, piloted by another person, that landed at the St. Petersburg-Clearwater, Florida, airport. Circumstantial evidence tended to establish that the plane had flown in from Colombia with a load of marijuana, that the load had been ditched in the Gulf off St. Petersburg shortly before the plane landed, and that the interior of the plane had been freshly smeared with pineapple to mask the odor of marijuana. The government contended the aliens could be found to be participants in a conspiracy, and therefore guilty of possession, because one or more of them must have pushed the bales of marijuana out of the plane and smeared the plane with pineapple (while the pilot remained at the controls). We held:

> Even if we assume the correctness of the government's premises, however, there was no direct testimony that any particular defendant either ejected or helped to eject the bales or did anything to mask the odor of the erstwhile cargo. No other active role in the alleged conspiracy or in the charged importation was even intimated during the government's case.

*Reyes,* p. 280.

The government would like us to hold that the jury might have inferred that one or more of the defendants pushed bales of marijuana out of the plane and smeared the cabin with pineapple, but there was no direct testimony that *any* of them did so, much less that *all* of them participated. Each of the defendants was entitled to have his guilt or innocence determined as an individual; the government failed to prove beyond a reasonable doubt that each defendant or any particular defendant participated in any way in the importation scheme beyond being present in the aircraft.

---

2. Arguably, presence at the scene, family relationship, vehicles operated by two brothers, unusual locale and hour, two pair of gloves, and visibility of the bales in the truck, might be enough, if there had been enough evidence to support an inference that appellant had been in the truck. *Compare U. S. v. Reyes*, 595 F.2d 275 (CA5, 1979) discussed *infra*, and *U. S. v. Cadena*, 585 F.2d 1252 (CA5, 1978), discussed and distinguished in *Reyes.*

> [In *Cadena* ] we affirmed the convictions of members of the crew of a vessel engaged in marijuana smuggling. There we noted that the crew sailed the heavily laden vessel for 45 days to a rendezvous point without apparent compulsion. The crew's active assistance was essential in the ship's navigation. There was direct testimony that, at the vessel's destination, 200 miles off United States shores, members of the crew transferred 150 bales of marijuana from their freighter to an American vessel, leaving much more of the contraband cargo still aboard. Importation of the bales of marijuana, the vessel's sole cargo, into the United States was the only apparent purpose for the voyage, and none other was later suggested. While specific evidence against any individual member of the crew was circumstantial, we concluded that the facts allowed us to affirm their convictions.

*Reyes,* at 280.

In his argument to the jury defense counsel implicitly accepted that the jury could find that appellant had been in the GMC and argued that the government did not meet its burden by mere proof that appellant was riding in the brother's truck with marijuana in the back. This tactical maneuver does not affect our review of the ruling on the motion for judgment of acquittal, which already had been made and denied.

*Id.,* at p. 281. In like manner, a jury could not infer that the scent from the vicinity of the truck to the tree where appellant and his brother were sleeping was the scent of appellant, or the scent of both men, and that it was not the scent of only David.

In addition, Clyde did not pick up the scent from the interior of the truck, or from any item removed from the truck, or even from its exterior. He "cut a tight circle" around the truck, found a scent and followed it. No doubt this is acceptable procedure for tracking down an escapee or fugitive, but it is not enough to support the chain of inferences that the government necessarily would have had the jury draw in this case when the motion for judgment of acquittal was made and denied, and that are argued to us on appeal—i. e., that it may be inferred that appellant was a conspirator because he was aware of the presence of the marijuana in the camper body of the truck, and it may be inferred that he was aware because he had been in the truck. A scent picked up at some unspecified point near the truck, even if identified as the scent of appellant, would not permit the inference that appellant had been inside the truck or in any other position where he could see the bales of marijuana within the camper body.

The test of sufficiency is whether the evidence, viewed as we have viewed it in the light most favorable to the government, could be accepted by a reasonably-minded jury as adequate to support a conclusion that appellant was guilty of conspiracy beyond reasonable doubt. *U. S. v. Warner,* 441 F.2d 821 (CA5), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971); *U. S. v. Prout,* 526 F.2d 380 (CA5, 1976). The evidence does not meet this standard, with respect to whether appellant knew of the conspiracy and, with that knowledge, voluntarily joined in it.[3] The government's effort to win by a nose does not succeed. Obviously, appellant's presence was highly suspicious, but this is not a substitute for evidence sufficient to prove beyond reasonable doubt.

Although it is certainly possible—maybe even probable—that Littrell was involved in the conspiracy, such speculation does not constitute proof beyond a reasonable doubt, and juries "must not be permitted to convict on suspicion and innuendo." *Littrell, supra,* 574 F.2d at 833. If appellant was not a participant in the conspiracy there is no evidence of possession.

If nothing else can be salvaged from this case, testimony concerning Clyde deserves to be perpetuated. After the dog handler described Clyde's experience and skill this ensued:

MR. MC ABEE (prosecutor): Your Honor, at this time, I would like to submit to the Court that the testimony concerning Clyde, the bloodhound, entitles him to be considered as an expert in this case. And that the testimony of Mr. Powell concerning Clyde will be used in that light.

MR. ENTIN (defense counsel): Your Honor, I would have to object. I think I ought to have the opportunity to confront and cross examine Clyde.

NOTE: (BRIEF COLLOQUY.)

MR. ENTIN: Your Honor, I think that the witness can testify as to what Clyde did, as to making him an expert in terms of putting him into the mind of an animal, I don't think we can do that. I think he can testify that he took the dog and the dog led him somewhere, but as to anything else, I really don't think that that makes him an expert.

THE COURT: The dog or the man?

MR. ENTIN: The dog was an expert, but the man was only carrying his leash. It's an unusual situation.

THE COURT: Well, I think if you give a full background of the dog's training and the dog's ability to smell . . .

MR. MC ABEE: . . . It has happened in the state of Georgia on several

---

**3.** No overt act in furtherance of the conspiracy need be proved. *U. S. v. Littrell,* 574 F.2d 828, 832 (CA5, 1978).

A conspiracy cannot be proved solely by family relationship or other types of close association. *U. S. v. White,* 569 F.2d 263 (CA5, 1978).

occasions where a bloodhound such as Clyde have (sic) been qualified in State Court, sir.

MR. ENTIN: Your Honor, I'm not saying we can't qualify the dog, we can't qualify the witness.

MR. MC ABEE: Well, in this particular instance, Your Honor, it's unlikely, Clyde has since died, I believe, so we don't have Clyde to bring in before the Court.

THE COURT: I'll let him testify.

MR. ENTIN: What about the application of the dead man's rule?

THE COURT: We don't have communication between a dead dog so I'm going to let it in.

Though successful in this appeal, counsel for appellant undoubtedly will always regret that in this colloquy, now enshrined in the official reports, he overlooked the confrontation clause of the Constitution.

The conviction is REVERSED with directions to enter a judgment of acquittal.