[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11461

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CONSTANTINE VARSAMAS VARAZO, II,
a.k.a. Smoke,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:21-cr-00032-CDL-MSH-1

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and HULL, Circuit Judges.

HULL, Circuit Judge:

A jury convicted Constantine Varazo II of possession with intent to distribute methamphetamine and heroin and possession of a firearm in furtherance of a drug-trafficking crime. On appeal, defendant Varazo argues that the district court abused its discretion in admitting (1) Deputy Chandler Buchanan's testimony about statements made by Russell Chapman to explain officer conduct, and (2) a book bag containing drugs, a firearm, and a cell phone over Varazo's chain-of-custody objection. Although Varazo did not object at the time, he also contends the district court plainly erred in admitting hearsay statements by James Eidson and Cliff Miller regarding the discovery of the bag. After careful review, and with the benefit of oral argument, we affirm defendant Varazo's convictions.

## I. INDICTMENT

On August 12, 2021, defendant Varazo was indicted on three counts: (1) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii); (2) possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (3) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Varazo pled not guilty. We recount in detail the trial evidence because this appeal involves evidentiary issues.

## II. TRIAL EVIDENCE[1]

### A. Attempted Traffic Stop

The government's first witness was Deputy Chandler Buchanan with the sheriff's office of Randolph County, Georgia, who testified as follows. On March 15, 2020, Deputy Buchanan attempted to conduct a traffic stop of a car. Refusing to stop, the driver led Buchanan on a 45-mile high-speed chase along Highway 82. During the chase, Buchanan observed items being thrown out of the car. Buchanan radioed other officers to tell them the locations where items were thrown from the car.

Ultimately, Deputy Buchanan stopped the car using a precision immobilization technique (PIT) maneuver. Buchanan detained all three occupants: (1) codefendant Robert Perkins, the driver; (2) codefendant Taylor Perkins, Robert's wife and the front seat passenger; and (3) defendant Varazo, the backseat passenger.[2]

The next morning, March 16, Deputy Buchanan and other officers searched the locations along Highway 82 in Randolph County where they observed items being thrown. The officers recovered several hypodermic needles and bags containing methamphetamine pills. Deputy Buchanan identified photographs of the bags of drugs that he and the other officers found.

---

[1] We recount the trial evidence in the light most favorable to the government. *See United States v. Moran*, 57 F.4th 977, 981 & n.4 (11th Cir. 2023).

[2] The Perkinses were charged with possession with intent to distribute methamphetamine and heroin. They both pled guilty.

Deputy Brent Yochum, also with the Randolph County Sheriff's Office, testified too. After the chase, Deputy Buchanan told Deputy Yochum that he saw items being thrown out of the car. Yochum went to Highway 82 the next morning with Buchanan and other officers. Yochum and Buchanan found multiple bags of pills in the ditch beside the highway.

Codefendant Taylor Perkins testified that defendant Varazo paid her and her husband Robert to drive Varazo from Pensacola, Florida to Cordele, Georgia to buy drugs. In Cordele, the supplier and defendant Varazo conducted a drug transaction in the backseat of the car. On the drive back to Pensacola, upon seeing Deputy Buchanan's blue lights, defendant Varazo told Robert Perkins to keep driving so Varazo could get rid of the drugs he bought. Taylor Perkins testified that defendant Varazo threw items out of the car but did not identify specific items.

## B. Recovery of the Book Bag

Deputy Buchanan also testified, without objection, that on March 20, James Eidson, an employee of a supply store located on Highway 82 named Miller Supply, found a book bag in a ditch in front of the store. Buchanan stated that Eidson told his boss about the bag, who in turn contacted Russell Chapman, a state probation officer.

Deputy Buchanan then testified about certain out-of-court statements by Chapman, stating: "[a]s soon as Mr. Chapman got [to the store] and seen what he was looking at, he contacted the sheriff's office. And that's when I was notified, the investigator at

the time was notified, and Colonel Price was notified." Colonel Wallace Price and the investigator, Darrell Dowdey, both worked for the sheriff's office of Randolph County.

The government asked Deputy Buchanan to explain what he meant by "seen what he was looking at?" Varazo objected, asserting that the question called for hearsay. In response, the government explained that it asked Deputy Buchanan what he meant by "when [Chapman] seen what [Chapman] was looking at." And the government clarified that it was not asking Deputy Buchanan to testify as to what Chapman said. Varazo maintained that the government's question still elicited out-of-court statements by Chapman.

The district court asked the government whether it was offering Probation Officer Chapman's statements to show what Deputy Buchanan did in response to them or for their truth. The government stated it was offering Chapman's statements to show what Buchanan did in response to them and to show how the bag got from the side of the road to the sheriff's office's custody. The district court overruled Varazo's objection. The district court found that if the government was offering Chapman's statements for that purpose, they were not hearsay.

The government again asked Deputy Buchanan what he meant when he testified that Probation Officer Chapman called the sheriff's office when he "seen what he was looking at." Buchanan testified that, at Miller Supply, Chapman opened the bag and found narcotics and a firearm. The district court immediately gave the

23-11461               Opinion of the Court                6

jury a limiting instruction, explaining that the "testimony is admitted not to show what was actually in the book bag but to show what law enforcement did in response to receiving that information."

Deputy Buchanan stated that the bag eventually ended up in law enforcement custody.  Buchanan examined the bag and found methamphetamine, heroin, a firearm, and a cell phone. Buchanan identified the bag, the cell phone, and photographs of several smaller bags of drugs.  The photographs were taken at the sheriff's office.  The district court admitted the photographs of the drugs into evidence.

Deputy Buchanan also identified the firearm located in the bag.  The government then moved to admit the firearm into evidence.  Varazo objected, arguing that the government had to establish the chain of custody before the firearm could be admitted. The government responded that chain of custody goes to the weight of the evidence, not admissibility.  The government argued that the firearm was admissible because Buchanan testified that law enforcement maintained custody of the bag after it was found.

Outside the presence of the jury, the district court questioned Deputy Buchanan about how the bag came into law enforcement custody.  Buchanan told the district court that Eidson located the bag in a ditch at Miller Supply and passed it along to his boss, who contacted Probation Officer Chapman, who ultimately delivered it to Colonel Price.  Buchanan was then contacted by

Colonel Price.  Price passed the bag to Investigator Dowdey, and then Buchanan and Dowdey went through the bag together.

The district court asked the government whether it was planning to call as witnesses the other individuals who possessed the bag to establish its chain of custody.  The government said that it would.  As discussed later, the government also called Chapman, Price, and Dowdey as witnesses.

As of this juncture though, and with the jury still excused, the district court stated that it would reserve ruling on the firearm's admission until further testimony established the chain of custody. The district court then brought the jury back in and instructed them that it would be premature to admit the firearm into evidence until additional evidence showed where it was prior to coming into Deputy Buchanan's possession.

The district court then allowed Deputy Buchanan to testify about the contents of the bag.  The government then moved to admit photographs of the bag and all of its contents, including the drugs, the firearm, and the cell phone.  Defendant Varazo raised the same chain-of-custody objection.  The district court again reserved ruling on admission until the chain of custody was established.

## C. Probation Officer Chapman's Testimony

The government also called Probation Officer Chapman to testify.  Without objection, Chapman testified that on March 20, he received a phone call from Cliff Miller, the owner of Miller Supply. Miller told Chapman that his employee Eidson found a book bag

in the ditch in front of Miller Supply on Highway 82. Miller told Chapman that he thought the bag had drugs and a gun in it.

Probation Officer Chapman drove to Miller Supply and met with both Eidson and Miller. Together, they opened the bag and saw methamphetamine, a handgun, and scales. Chapman identified in court the bag and a previously admitted photograph of several small bags of methamphetamine.

Probation Officer Chapman contacted the chief deputy at the sheriff's office to report the bag. The chief deputy said he would send a deputy to the store to retrieve the bag. The deputy sent was Colonel Price. Upon arrival, Price told Chapman that he needed to respond to a call for a shooting. Price told Chapman to bring the bag and its contents to him at the scene of the shooting. Chapman drove to the scene and gave the bag to Price as soon as the scene was safe.

Defendant Varazo briefly cross-examined Probation Officer Chapman, asking whether Chapman retrieved the bag from Miller or Eidson. Chapman responded that when he arrived at the store, Miller and Eidson were both present and the bag was sitting on a table, so he did not directly retrieve it from either of them. Varazo also asked Chapman who discovered the bag in the ditch, and Chapman said Eidson did.

## D. Colonel Price's and Investigator Dowdey's Testimony

As noted earlier, the government also presented testimony from two other employees of the sheriff's office: Colonel Price and Investigator Dowdey. Without objection, Colonel Price stated

that the bag was found at Miller Supply.  Price learned about the bag from a call that the sheriff's office received.  Price went to Miller Supply and met with Probation Officer Chapman.  Chapman told Price that he had a book bag containing drugs and a gun.

Before Colonel Price could take possession of the bag from Chapman, Price had to leave to respond to a call for a shooting. Price directed Chapman to photograph the bag and its contents and bring the bag to him.  After Chapman gave Price the bag, Price delivered it to Investigator Dowdey, the evidence custodian, without looking into the bag himself.  Price then informed Deputy Buchanan about the bag because Buchanan was involved in the high-speed chase.

Investigator Dowdey, the evidence custodian, testified, without objection, that he received the book bag from Colonel Price on March 20.  Dowdey then took the bag to the sheriff's office and met with Deputy Buchanan.  Together, Dowdey and Buchanan inventoried the bag and photographed its contents. Dowdey identified photographs of the drugs and the firearm and stated that he found those items in the bag.  The photographs of the bag and all of its contents, including the drugs, firearm, and cell phone, were then admitted into evidence without objection.

**E. Cell Phone**

The government also called Chase Littlejohn, a forensic analyst with the Georgia Bureau of Investigation.  Littlejohn testified that Deputy Buchanan contacted him about a cell phone that was recovered during the investigation.  Littlejohn conducted

a forensic extraction of the cell phone. The phone contained (1) images of defendant Varazo, (2) images of Varazo's driver's license and automobile insurance card, and (3) text messages that included Varazo's full name. Photographs of the contents of the phone were admitted into evidence.[3]

## F. Closing Arguments

Defendant Varazo did not testify or present evidence. During closing argument, Varazo's counsel attacked codefendant Taylor Perkins's credibility as a witness and emphasized that the government's case depended on her testimony. Defense counsel suggested that Taylor Perkins put Varazo's cell phone in the bag and threw it out the window. Defense counsel asserted that nothing identified the bag as belonging to Varazo, since the drugs were not tested. Defense counsel noted that neither Eidson nor Miller testified. Defense counsel also suggested that Eidson could have found the cell phone in the ditch near the bag and put it in the bag.

## G. Verdict

The jury found Varazo guilty on all three counts. Prior to sentencing, Varazo filed a motion for a new trial, which the district court denied. The district court sentenced Varazo to 228 months' imprisonment, consisting of concurrent 168-month sentences on

---

[3] The government did not tender the cell phone itself as evidence.

the drug convictions and a consecutive 60-month sentence on the firearm conviction. Varazo timely appealed.[4]

### III. STANDARDS OF REVIEW

We generally review a district court's evidentiary rulings for an abuse of discretion. *United States v. Macrina*, 109 F.4th 1341, 1347 (11th Cir. 2024). But we will not reverse when an error is harmless. *United States v. Fey*, 89 F.4th 903, 910 (11th Cir. 2023). "A non-constitutional error warrants reversal only if 'there is a reasonable likelihood that the error affected the defendant's substantial rights.'" *United States v. Harding*, 104 F.4th 1291, 1298 (11th Cir. 2024) (quoting *United States v. Green*, 873 F.3d 846, 867 (11th Cir. 2017)).

When a party fails to object to an evidentiary ruling at trial, our review is limited to plain error. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007). Under plain-error review, "a defendant must show there is (1) an error, (2) that is plain, and (3) that affects substantial rights." *United States v. Buselli*, 106 F.4th 1273, 1282 (11th Cir. 2024). We then may exercise "discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

---

[4] On appeal, Varazo does not challenge his sentence or the district court's denial of his motion for a new trial.

## IV. DISCUSSION

### A. Chapman's Out-of-Court Statements

Varazo argues that the district court abused its discretion in admitting Deputy Buchanan's testimony about Probation Officer Chapman's statements that he saw drugs and a firearm in the bag at Miller Supply.  We need not decide whether Buchanan's testimony about Chapman's statements was hearsay because any error in admitting this alleged hearsay was harmless and not prejudicial given Chapman himself testified as a witness later at trial and was subject to cross-examination.

This Court has long held that admitting a hearsay statement is not prejudicial when the out-of-court declarant, here Chapman, is called as a witness and cross-examined at trial.  *See United States v. Campbell*, 223 F.3d 1286, 1289 (11th Cir. 2000); *United States v. Bright*, 630 F.2d 804, 815 (5th Cir. 1980); *United States v. Velasquez*, 496 F.2d 1009, 1011 (5th Cir. 1974).[5]

In *Campbell*, this Court explained that a defendant "cannot establish prejudice" when the declarant "was called as a witness and was thoroughly cross-examined at trial." *Campbell*, 223 F.3d at 1289.  Similarly, in *Bright*, our predecessor Court held that any error in admitting damaging hearsay "was adequately cured" because the declarant was the next witness and was available for

---

[5] This Court adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

cross-examination. *Bright*, 630 F.2d at 815. And in *Velasquez*, the same Court reached the same conclusion, stating, "whatever prejudice might have arisen [from admission of hearsay] was adequately cured when the [declarant] himself was placed on the stand as a [g]overnment witness and subjected to searching cross-examination." *Velasquez*, 496 F.2d at 1011.

Probation Officer Chapman, the declarant of the out-of-court statements regarding the contents of the bag, testified at trial and was subject to cross-examination by defendant Varazo. Chapman testified about the recovery of the bag at Miller Supply and stated that when he opened the bag, he saw methamphetamine and a firearm. Varazo was able to cross-examine Chapman about the bag and its contents, and indeed did so. Any error in admitting Deputy Buchanan's testimony was adequately cured by Chapman's subsequent testimony, did not prejudice Varazo, and was harmless. *See Velasquez*, 496 F.2d at 1011; *Campbell*, 223 F.3d at 1289.

Varazo contends that Chapman's testimony does not cure the prejudice of the alleged hearsay statements because, unlike in *Bright*, Chapman was not the next witness to testify after Buchanan. But *Bright* does not hold that the admission of hearsay evidence is harmless only if the declarant testifies *immediately* after the witness who testified to the declarant's hearsay statements. 630 F.2d at 815. Instead, as *Campbell* and *Velasquez* make clear, harmlessness does not depend on when the hearsay evidence is admitted as long as the declarant testifies. *See Campbell*, 223 F.3d at 1289; *Velasquez*, 496

F.2d at 1011.  This gives the defendant the opportunity to cross-examine the declarant about the out-of-court statements.  *See Campbell*, 223 F.3d at 1289; *Velasquez*, 496 F.2d at 1011.  Here, Chapman testified after Buchanan, so Varazo had the opportunity to cross-examine Chapman about the out-of-court statements.

Varazo also suggests that the prejudice was not cured because, unlike in *Bright*, Chapman's testimony was not already in evidence through another witness.  *Bright* does state that "most of [the hearsay] was already in evidence through [another witness]." 630 F.2d at 815.  However, *Bright* ultimately holds that the hearsay error was cured by the declarant's subsequent testimony and cross-examination.  *Id.*  *Bright* never states that the prejudice was cured *because* the information was introduced through yet another witness.  *See id.*  Our reading of *Bright* is wholly consistent with *Campbell* and *Velasquez*, which also emphasize the declarant's testimony and availability for cross-examination and are silent about the same evidence being admitted through another witness. *See Campbell*, 223 F.3d at 1289; *Velasquez*, 496 F.2d at 1011.

In sum, we conclude that any error in admitting Chapman's out-of-court statements was harmless because he later testified about the same events and was subject to cross-examination.

## B. Chain of Custody

Next, Varazo argues that the district court abused its discretion in admitting the bag and its contents over his chain-of-custody objection.  We disagree.

Challenges to the chain of custody generally go to the weight rather than the admissibility of evidence. *United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir. 1985); *United States v. Hughes*, 840 F.3d 1368, 1383 (11th Cir. 2016); *United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990). "[T]he adequacy of the proof relating to the chain of custody is not a proper ground to challenge the admissibility of the evidence." *Lopez*, 758 F.2d at 1521.

Varazo argues that our caselaw mostly addresses gaps in the chain of custody *after* law enforcement takes possession of the evidence. This ignores that our predecessor Court twice rejected a chain-of-custody challenge where, like this case, the gap occurred *before* the government took possession of the evidence. *United States v. White*, 569 F.2d 263, 266 (5th Cir. 1978); *United States v. Henderson*, 588 F.2d 157, 160 (5th Cir. 1979). In both decisions, the Court held that whether the government proved an adequate chain of custody goes to the weight rather than the admissibility of the evidence. *White*, 569 F.2d at 266; *Henderson*, 588 F.2d at 160.

In *White*, for example, one of the defendants sold heroin to a confidential informant. *White*, 569 F.2d at 265. On appeal, the defendant challenged the chain of custody regarding the heroin that government agents took from the informant after the transaction. *Id.* The defendant specifically argued that because government agents did not personally observe the transaction, the informant could have obtained the drugs from another source. *Id.*

The *White* Court rejected the defendant's chain-of-custody challenge to admission of the heroin. *Id.* at 266. The Court

contrasted the case with "a routine chain of custody situation in which the chain is broken between seizure of the evidence from the accused and a subsequent trial." *Id.* The Court recognized the typical rule that "the mere possibility of a break in the chain" raises the question of weight rather than admissibility. *Id.* The Court then "appl[ied] the same rule in the instant case." *Id.* Subsequently, in *Henderson*, our predecessor Court held, "[i]t is well settled that whether the government has proved an adequate chain of custody goes to the weight rather than the admissibility of the evidence." *Henderson*, 588 F.2d at 160.

Following our binding precedent in *White* and *Henderson*, we conclude that Varazo's chain-of-custody challenge regarding the bag and its contents goes to the weight of the evidence, not its admissibility. *White*, 569 F.2d at 266; *Henderson*, 588 F.2d at 160.

Varazo's chain-of-custody challenge also fails for an alternative, independent reason. Although Eidson and Miller—who discovered the bag and gave it to Chapman—did not testify at trial, ample circumstantial evidence connected the bag and its contents to Varazo and supplied the missing link.

Specifically, uncontroverted evidence established that Varazo (1) bought drugs in Cordele with Robert and Taylor Perkins present, (2) told codefendant Robert Perkins not to stop when Deputy Buchanan tried to pull them over so Varazo could get rid of the drugs, and (3) threw objects out of the window during the chase on Highway 82 in Randolph County. Officers found drugs and drug paraphernalia along Highway 82, where the chase

occurred.  Chapman himself received a call about a bag, went to the Miller Supply store on Highway 82, and picked up the bag at Miller Supply.  Chapman had firsthand knowledge of his own conduct and could testify about what he did and what was in the bag he retrieved personally from both Eidson and Miller and then took to Colonel Price.

In addition to the drugs and a firearm, the bag contained a cell phone that had images of Varazo's driver's license and auto insurance information and text messages that included Varazo's name.  The only missing link perhaps is Eidson's testimony about where he first found the bag—a ditch on Highway 82 in front of Miller Supply.  Still, in that regard, there is no dispute that (1) Eidson worked for Miller Supply, (2) Miller Supply is located on Highway 82, (3) the chase occurred on Highway 82, (4) Eidson found the bag a few days after the chase on Highway 82, and (5) both Eidson and Miller were present when Chapman picked up the bag.

The overall circumstances of the bag's discovery are more than sufficient to show that Varazo threw the bag and its contents from the car during the chase on Highway 82.  The government also established exactly how the bag went from Eidson and Miller to Chapman to Price and then to Dowdey and Buchanan.

Varazo contends that the gap between the March 16 chase, Eidson's discovery of the bag, and its March 20 relinquishment to Chapman and the sheriff's office was too great to permit admission. Varazo's argument is inconsistent with our precedent, which

provides that gaps in the chain of custody affect weight and not admissibility. *See White*, 569 F.2d at 266; *Henderson*, 588 F.2d at 160. Varazo was free to attack the evidence during cross-examination of the government's witnesses or at closing argument, and indeed did so. His arguments on appeal do not provide a basis to reverse.

We recognize that in *White*, the informant's testimony "supplie[d] the missing link in the chain, since [the informant] testified that he purchased the drugs from [the defendant]." *White*, 569 F.2d at 266. Notably, however, the *White* Court did not hold that testimony from the informant was required for the drug evidence to be admissible. *Id.* The *White* Court explained that "[a]llowing the informant's testimony to supply the missing link is no different than allowing connection of physical evidence with a defendant to be shown by circumstantial evidence." *Id.* In such cases, the *White* Court stated, "proof of the connection goes to the weight of the physical evidence rather than its admissibility." *Id.* The same is true here, where the circumstantial evidence recounted above sufficiently provided the connection between the bag and Varazo.

Varazo also argues that because Eidson did not testify at trial, it is possible that the items in the bag were not in the same condition as when they were discovered by Eidson or that someone altered or interfered with the bag. Varazo thus asserts that the circumstances surrounding the bag's discovery were insufficient to authenticate the bag. Even phrased in terms of authenticity, Varazo's challenge fails. A proponent of evidence

may authenticate the evidence "solely through the use of circumstantial evidence," including the evidence's "distinctive characteristics and the circumstances surrounding its discovery." *United States v. Williams*, 865 F.3d 1328, 1343 (11th Cir. 2017) (quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). As we explained above, the circumstantial evidence presented at trial was sufficient to authenticate the bag as found on Highway 82 and to connect it to Varazo.

## C. Out-of-Court Statements as to the Bag's Discovery

Lastly, Varazo argues that the district court erred in admitting certain hearsay testimony from Deputy Buchanan, Probation Officer Chapman, Colonel Price, and Investigator Dowdey regarding discovery of the bag by Eidson and Miller. Liberally construed, Varazo identifies (1) Buchanan's testimony about Eidson's discovery of the bag; (2) Chapman's testimony as to where Eidson found the bag; (3) Price's testimony about the bag's location; and (4) Dowdey's testimony about the methamphetamine located inside the bag and the date it was found by Eidson. Varazo contends that this testimony was hearsay because it was all based on out-of-court statements made by Eidson and Miller to Chapman about the circumstances of the bag's discovery. Varazo argues that without this hearsay testimony, the bag and its contents were inadmissible.

Varazo did not object to admission of this alleged hearsay testimony at trial, so we review his argument for plain error only. *See Turner*, 474 F.3d at 1275. Because all three prongs of plain-error

review must be met, a defendant must show that any error affected his substantial rights. *United States v. Hill*, 99 F.4th 1289, 1312 (11th Cir. 2024). "Substantial rights are prejudiced 'when a reasonable probability arises that, but for the [error], the outcome of the trial would have been different.'" *United States v. Maradiaga*, 987 F.3d 1315, 1324 (11th Cir. 2021) (quoting *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014)). "Satisfying the substantial rights prong of plain error review 'is anything but easy.'" *United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020) (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005)). The admission of hearsay evidence does not affect a defendant's substantial rights when other evidence is sufficient to support the verdict. *Jenkins v. United States*, 404 F.2d 873, 874 (5th Cir. 1968).

Even assuming the challenged testimony was hearsay and inadmissible, Varazo cannot establish a reasonable probability that, but for the error, the outcome of the trial would have been different. That is, without the challenged testimony, the bag and its contents still would have been admitted. In our earlier chain of custody discussion, we already recounted in detail the ample circumstantial evidence that existed to connect the bag and its contents to Varazo, to authenticate the bag, and to admit the bag with its contents. The admission of the bag and its contents into evidence was not dependent on any out-of-court statements by Eidson and Miller.

For example, Deputy Buchanan and codefendant Taylor Perkins both testified that items were thrown from the car during

the chase on Highway 82.  Taylor Perkins testified that Varazo told Robert Perkins to keep driving so he could get rid of the drugs.  The testimony also showed how the bag and its contents went from Eidson and Miller to Chapman to Price and then to Dowdey and Buchanan.  Forensic analyst Littlejohn then testified that the cell phone found in the bag had images of Varazo's driver's license and auto insurance information and text messages that included Varazo's name.  The evidence of the bag and its contents along with all the other trial evidence was substantial and more than enough for a jury to convict Varazo.

Varazo thus has not carried his burden to show a reasonable probability that, but for the purported hearsay statements, the outcome of his trial would have been different.  He therefore cannot show plain error.

## V. CONCLUSION

For the reasons stated above, we affirm Varazo's convictions of possession with intent to distribute methamphetamine and heroin and possession of a firearm in furtherance of a drug-trafficking crime.

**AFFIRMED.**