**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Timothy John EVANS, Defendant–
Appellant.**

**No. 89–6107.**

United States Court of Appeals,
Fifth Circuit.

June 28, 1991.

---

Sherri Saucer, Law Student, Prof. Henry Gabriel (Court-appointed), New Orleans, La., for defendant-appellant.

Robert L. Rawls, Debra A. Carr, Asst. U.S. Attys., Beaumont, Tex., Bob Worhtam, U.S. Atty., Tyler, Tex., for plaintiff-appellee.

Before KING and JONES, Circuit Judges.*

PER CURIAM:

Timothy John Evans (Evans) appeals his conviction and sentence for conspiring to manufacture methamphetamine, in violation of 21 U.S.C. § 846. On appeal, Evans contends that (1) the government engaged in outrageous conduct which violated due process; (2) the evidence presented at trial was insufficient to support defendant's conviction for conspiracy; (3) the absence of a government informant as a witness denied Evans a fair trial; and (4) his sentence was improper. Finding no basis for reversal, we affirm Evans's conviction and sentence.

---

* Judge Alvin B. Rubin was a member of the original panel but died on June 11, 1991 before this decision was rendered. This matter is being decided by a quorum. 28 U.S.C. § 46(d).

## I.

On July 6, 1988, Evans entered Scientific Chemicals, a public chemical supply store owned and operated by U.S. Drug Enforcement Administration (DEA) informant Ron Fernandez (Fernandez). While making a routine check of the store's records, DEA agent Norris Rogers (Rogers) noticed Evans examining various equipment and precursor chemicals that could be used in the manufacture of methamphetamine. Rogers initiated a conversation with Evans. According to Rogers, Evans claimed to be a distributor and to have experimented with a small drug laboratory in his home. The two discussed the manufacture of methamphetamine and Rogers told Evans that he "could help him" manufacture methamphetamine for a price.

Following a meeting on July 7, Evans phoned Rogers on July 14 and again at the end of July to discuss the drug venture.[1] Rogers had no further contact with Evans until August 30, when Evans called Scientific Chemicals and left a message that he wanted to meet Rogers at the store. That evening, Evans and his co-defendant, Mike Lewis, met with Rogers and Fernandez. Evans gave Fernandez $1000 as a down payment for the equipment and supplies necessary to set up a "meth laboratory," and he gave Rogers $500 to rent a laboratory site.

On September 8, Evans and Lewis again met with Rogers at Scientific Chemicals. DEA agent Gene Lewis was also present at this meeting. Agents Rogers and Lewis assisted Evans in selecting chemicals and equipment. The four men then proceeded to a motel to set up a laboratory, where the defendants ultimately were arrested.[2]

A grand jury returned an indictment charging Evans and Mike Lewis with conspiracy to manufacture methamphetamine, and for possession of a firearm during a drug trafficking crime. Prior to trial, Evans filed several motions including a motion to dismiss the indictment or, in the alternative, for a continuance, based on Evans's inability to subpoena Fernandez, the DEA informant. This motion was denied after the government argued that Fernandez's testimony was unnecessary because other persons were available who could testify regarding the events that Fernandez witnessed. After a three-day jury trial, both defendants were found guilty on all counts. Evans was sentenced to 123 months imprisonment and three years supervised release. Evans filed a timely notice of appeal.

## II.

### A.

Evans first argues that the government engaged in "outrageous conduct" that deprived him of due process of law. Evans argues that the DEA agents approached him and offered to help him manufacture drugs, phoned him to pursue the arrangement, supplied the expertise, sold Evans the equipment, and supplied the laboratory site.

The Supreme Court recognized the defense of outrageous conduct in *United States v. Russell*, stating that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973). This defense may be successfully invoked in only the rarest and most outrageous circumstances and a defendant's claim is reviewed as a legal matter based on the totality of the circumstances. *United*

---

1. There was conflicting testimony regarding whether Evans or Rogers initiated phone calls which discussed the operation and the extent to which Rogers pushed the project.

2. DEA agents videotaped the proceedings in the hotel room from an adjacent room. Agents Rogers and Lewis gave Evans step by step instructions on how to produce the drug; they instructed Evans on how to set up the equipment, and on the ingredients and ratios required for producing "meth." The DEA Agents testified, however, that although they told Evans that they were producing methamphetamine, they actually mixed the chemicals to make a non-controlled substance.

*States v. Stanley,* 765 F.2d 1224, 1231–32 (5th Cir.1985); *United States v. Tobias,* 662 F.2d 381, 387 (5th Cir. Unit B 1981), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982).

■ To successfully invoke the outrageous government conduct defense, the defendant must show that the challenged government conduct violated "that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *Russell,* 411 U.S. at 432, 93 S.Ct. at 1643 (quoting *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 246, 80 S.Ct. 297, 304, 4 L.Ed.2d 268 (1960)). As this court has stated, "the outrageous-conduct defense requires not only government overinvolvement in the charged crime but a passive role by the defendant as well. A defendant who actively participates in the crime may not avail himself of the defense." *United States v. Arteaga,* 807 F.2d 424, 427 (5th Cir.1986).

In *Tobias,* the DEA placed an advertisement in a magazine offering over-the-counter sales of chemicals and laboratory equipment. The defendant responded to the ad, requesting "more information." After Tobias placed an order for chemicals, he telephoned to cancel his order because he discovered that he could not manufacture cocaine without more knowledge and equipment. The DEA agent suggested that the manufacture of Phencyclidene (PCP) would be easier. The agent sent Tobias information on the production of PCP and on thirteen occasions answered questions from Tobias and his wife regarding the PCP manufacturing process. When the DEA executed a search warrant on Tobias's house, they found liquid PCP. 662 F.2d at 383–84. This court rejected the defendant's outrageous conduct defense, but averred that "this case does set the outer limits to which the government may go in the quest to ferret out and prosecute crimes in this circuit." 662 F.2d at 387. In

rejecting this defense, the court determined that Tobias was a "predisposed active participant," motivated solely by the desire to make money. We stated that "[t]his would be a more difficult case if the DEA had pursued Tobias by repeated phone calls and encouragement." *Id.* at 387.

In the present case, there is more than enough evidence to establish that Evans was a "predisposed active participant" based on his past drug activities, his investigation into the processes by which drugs are made, and his active participation in the scheme for which he was convicted. There is evidence in the record that Evans purchased the glassware and chemicals required for the manufacture and made diligent notes on the agent's manufacturing process instructions for future reference. Thus, we cannot say that he played a "passive role." [3]

### B.

■ Evans next argues that the government failed to establish that a conspiracy existed between Evans and Mike Lewis. Evans contends that there was insufficient evidence that Evans and Lewis knowingly and voluntarily agreed to participate in a conspiracy to manufacture methamphetamine. Rather, Evans contends that Lewis was merely present at the meetings between Evans and the agents for security and was not a "true conspirator."

In reviewing a challenge to the sufficiency of evidence to support a conviction, this court must affirm a conviction if any rational fact-finder could have found each of the essential elements of the crime beyond a reasonable doubt. *United States v. Alvarado,* 898 F.2d 987, 991 (5th Cir.1990). In doing so, we review the evidence in the light most favorable to the government, making all reasonable inferences and credibility choices in favor of the verdict. *Id.* To establish a violation of 21 U.S.C. § 846, "the government must 'prove beyond a rea-

---

**3.** We note that the U.S. Supreme Court has recently granted certiorari in a case in which the defendant asserted the *Russell* outrageous government conduct defense. *United States v. Jacobson,* 916 F.2d 467 (8th Cir.1990) (en banc), *cert. granted in part,* —— U.S. ——, 111 S.Ct. 1618, 113 L.Ed.2d 716 (1991). This case involved a violation of 18 U.S.C. § 2252(a)(1) and the facts in that case are substantially different from those in the case at bar.

sonable doubt that a conspiracy existed, the accused knew of the conspiracy, and he knowingly and voluntarily joined it.'" *United States v. Landry,* 903 F.2d 334, 338 (5th Cir.1990) (quoting *United States v. Hernandez–Palacios,* 838 F.2d 1346, 1348 (5th Cir.1988)).

Although "mere presence" at the scene of a crime will not support an inference of participation in a conspiracy, it is a "significant factor to be considered within the context of the circumstances under which it occurs." *United States v. Medina,* 887 F.2d 528, 533 (5th Cir.1989). In the present case, Lewis was present at several meetings at which Evans and the agents discussed the manufacture of the methamphetamines, and Lewis knew of the existence of criminal activity at the laboratory site where he was arrested. During the actual production, Lewis assisted in several minor ways. In addition, there was testimony that Evans and Lewis had agreed to "split" the methamphetamine manufactured. Viewing this evidence in the light most favorable to the government, we hold that there was sufficient evidence for the jury to find that a conspiracy existed between Evans and Lewis.

### C.

Evans next contends that he was denied a fair trial because the testimony of an allegedly material witness, Fernandez, was unavailable. Evans contends that Fernandez's absence was significantly prejudicial to Evans because Fernandez was a material witness regarding Evans's outrageous government conduct defense, his testimony would have been relevant to an entrapment defense, and Fernandez could further demonstrate the lack of a conspiracy.

In reviewing the government's obligation to disclose the identity and whereabouts of government informers, a court must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defenses." *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957); *United States v. Nixon,* 777 F.2d 958, 967 (5th Cir.1985). Where the government refuses to produce a witness, the court must consider three factors: the level of involvement in the alleged criminal activity, the helpfulness of disclosure to any asserted defense, and the government's interest in non-disclosure. *United States v. De Los Santos,* 810 F.2d 1326, 1331 (5th Cir.), *cert. denied,* 484 U.S. 978, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987). The district court's decision to grant or deny disclosure of an informant is reviewed under an abuse of discretion standard. *Id.* at 1332; *see United States v. Fischel,* 686 F.2d 1082, 1093 (5th Cir.1982).

This is not a case in which the informant's identity is unknown, but rather a case in which the informer has changed his name, and his address has become unavailable immediately prior to trial. Nonetheless, the above analysis provides guidance for the adjudication of this challenge. *See Fischel,* 686 F.2d at 1090–94. To succeed on his claim, Evans must establish that he was prejudiced by the loss of access to Fernandez's testimony by demonstrating that the information was material to Evans's defense, favorable to his defense, and irreplaceable, i.e. unavailable from other sources. *Id.* at 1093. The district court heard evidence on Fernandez's potential testimony during a hearing on Evans's motion to dismiss the indictment, or in the alternative, for a continuance. In addition, the court reviewed DEA documents regarding Fernandez *in camera.* There was evidence presented that the information that would be provided by Fernandez's testimony could be obtained through other witnesses and that Fernandez was not a key player in the actual drug conspiracy. Thus, we cannot say that the district court abused its discretion in denying Evans's motion.

### D.

Last, Evans challenges his sentence because he contends that it is based on erroneous, immaterial information. Evans argues that the only type of drug that could have been produced with the chemi-

cals available at Scientific Chemicals was Levo-methamphetamine, "a stereoisomer version of methamphetamine." The United States Sentencing Guidelines (U.S.S.G.) provide a lower sentencing level for Levo-methamphetamine than that used by the district court in computing Evans's sentence based on methamphetamine. Evans's appellate counsel, assisted by an expert organic chemist, makes a detailed argument on this basis. This challenge, however, was not raised by Evans at trial or during the sentencing proceedings. No witness testified to the defendant's theory at either juncture so as to create a record upon which we could base our review. Based on the lack of evidence in the record to establish any error, there are no grounds upon which to reverse the district court on this issue.

 Evans also challenges his sentence because he contends that it is based on the amount of drug that the government agents predetermined by its supply of chemicals and the capacity of the glassware provided by the government. Again, this challenge was not raised at trial. Evans argues that this court has previously found plain error in the determination of a defendant's sentence when the government has supplied the chemicals used in a drug conspiracy. *Tobias*, 662 F.2d at 388. In *Tobias*, this court found that the district court relied on an erroneous assumption which was not supported by the record in sentencing Tobias—that Tobias had understood the amount of PCP that could be produced by the chemicals provided by the government. *Id.; see Roussell v. Jeane*, 842 F.2d 1512, 1524 (5th Cir.1988). A defendant making this challenge, however, has the burden to demonstrate that the district court relied on erroneous assumptions or materially untrue information. *United States v. Mueller*, 902 F.2d 336, 347 (5th Cir.1990); *United States v. Flores*, 875 F.2d 1110, 1113 (5th Cir.1989). In the instant case, there was evidence that Evans understood the amount of drug to be produced and Evans has failed to overcome his burden to the contrary.

The district court's sentence was in line with U.S.S.G. § 2D1.4 which "permits the court to examine the overall scheme and to infer circumstantially either the total drug quantity involved in the offense or the capability of its production." The discretion retained by the district court under § 2D1.4 allows the court to review the government's prosecution and to prevent any outrageous manipulation of the drug amount. This is consistent with our recent analysis in a similar situation—when the government engages in a money laundering sting operation. *See United States v. Richardson*, 925 F.2d 112, 117–18 (5th Cir. 1991).

### III.

Based on the foregoing, we affirm Evans's conviction and sentence.

AFFIRMED.