UNITED STATES of America,
Plaintiff–Appellee,

v.

Rodney FEATHERSON, a/k/a River Rat,
James Edward Langston, and Ray
Langston, a/k/a Big Ray, Defendants–
Appellants.

No. 90–1681.

United States Court of Appeals,
Fifth Circuit.

Dec. 18, 1991.

Bob Craig, Lubbock, Tex. (Court-appointed), for J.E. Langston.

Floyd Holder, Lubbock, Tex. (Court-appointed), for Featherson.

Tommy Turner, Lubbock, Tex. (Court-appointed), for Ray Langston.

Joe C. Lockhart, Asst. U.S. Atty., Fort Worth, Tex., C. Richard Baker, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Lubbock, Tex., for U.S.

Before KING, JOHNSON, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendants Rodney Featherson ("Featherson"), James Edward Langston ("James"), and Ray Langston ("Ray") appeal their convictions for various controlled substance violations. They allege: (1) the district court abused its discretion in denying the motions of severance of James and Ray; (2) the district court exceeded its discretion by allowing the jury to use transcripts of audio recordings; (3) there is insufficient evidence to support their convictions of conspiracy with intent to distribute; (4) there is insufficient evidence to support the convictions of James and Featherson for use of a firearm during a drug trafficking crime; and (5) the district court gave an incorrect jury instruction. Finding no error, we affirm.

## I.

## BACKGROUND

On April 25, 1990, James, Ray and Featherson were charged in a twenty-one count indictment involving various controlled substance violations, including conspiracy to possess with intent to distribute fifty grams or more of cocaine base.

During the period from September 19, 1989 to March 29, 1990, Bureau of Alcohol, Tobacco and Firearms ("ATF") agent Felix Garcia ("Agent Garcia") used confidential informants, Eddie Ward ("Ward") and Shawn Harris ("Harris"), to make numerous purchases of cocaine base or crack cocaine, primarily in the 1700 block of Avenue B ("the flats") in Lubbock, Texas. To prepare for these controlled buys, Agent Garcia would search the informants, place a listening device on them, and then give the informants instructions and funds to purchase crack cocaine. The informants would then make such purchases, and the broadcast of these transactions was then monitored and recorded by surveillance agents. After the transactions, the informants would give the crack cocaine and any remaining buy-money to Agent Garcia. The confidential informants purchased cocaine base or crack cocaine from James, Ray, and Featherson.

These drug transactions played out as follows: on September 19, 1989, Ward went to the flats and James sold him cocaine base; on October 2, 1989, James sold Ward more cocaine base; on October 16, 1989, Ray sold Ward cocaine base at the flats; and, on October 20, 1989 and October 24, 1989, Ray again sold Ward cocaine base at the flats.

Then, on November 19, 1989, the Lubbock police found Featherson with cocaine base in his car. Featherson also had a .25 semi-automatic pistol, a .357 caliber Smith & Wesson, and a .22 caliber revolver in his possession. On January 15, 1990, the Lubbock police found James in an apartment in the flats where James and Ray were attempting to manufacture cocaine base. In addition to the drugs found in the apartment, James had a loaded .380 semi-automatic pistol which the police officers found between a mattress and box springs approximately six to eight feet from where James had been standing.

The controlled buys continued: on March 12, 1990 and again on March 15, 1990, Ray referred Ward to Featherson who sold Ward cocaine base; on March 27, 1990, James and Ray sold cocaine base to Harris; and on March 29, 1990, Ray again sold Harris cocaine base. On March 30, 1990, several federal search warrants were executed on several rooms in the flats; one of these rooms was in Ray's temporary pos-

session. All three defendants were subsequently indicted.

Following a jury trial, James was convicted of eleven counts of drug-related violations; Ray was convicted of twelve counts of drug-related violations; and Featherson was convicted of eight counts of drug-related violations. James was given two sentences—one of 136 months' imprisonment and one of 60 months' imprisonment;[1] Ray was sentenced to 188 months' imprisonment. Featherson was given two sentences—one of 135 months' imprisonment and one of 60 months' imprisonment. Each defendant also received a five-year term of supervised release. All three defendants timely appealed.

## II.

### THE MOTIONS TO SEVER

■ James and Ray argue that the district court erred by denying their separate motions for severance. As a general rule, defendants who are indicted together are tried together. *See United States v. Arzola–Amaya,* 867 F.2d 1504, 1516 (5th Cir.), *cert. denied,* 493 U.S. 933, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989) (citation omitted). This rule is especially strong when the defendants are charged with committing the same conspiracy. *See United States v. McGuire,* 608 F.2d 1028, 1031 (5th Cir.1979), *cert. denied,* 446 U.S. 910, 100 S.Ct. 1838, 64 L.Ed.2d 262 (1980) (citation omitted).

■ This court reviews a district court's denial of a motion for severance for abuse of discretion. *See United States v. De Varona,* 872 F.2d 114, 120–21 (5th Cir. 1989) (citation omitted). To demonstrate abuse, defendants must show that the joint trial prejudiced them to such an extent that the district court could not provide adequate protection, and the prejudice outweighed the government's interest in the economy of judicial administration. *Id.* The denial of a motion for severance will result in reversal only where defendants can show that they were unable to obtain a fair trial without a severance. *See United*

States v. Crawford, 581 F.2d 489, 491 (5th Cir.1978) (citations omitted). Furthermore, reversal is only warranted when the appellant demonstrates that the trial court was unable to afford protection against compelling prejudice. *Id.* Thus, a showing of compelling prejudice is required before we may overrule the district court's decision regarding severance. *See United States v. Bright,* 630 F.2d 804, 813 (5th Cir.1980) (citation omitted).

■ James and Ray contend that the evidence showed separate transactions that are similar only in that they occurred in the same location with the same informants during the same time period. The evidence, however, reveals cooperative conduct among the three defendants. Ray and Featherson distributed cocaine base. Ray and James participated in jointly manufacturing and distributing cocaine base, and Ray made referrals to Featherson. The Government made a complete and coherent case against each defendant. The jury considered the counts against each defendant individually, and returned the guilty verdicts against defendants separately; there is no indication that the jury did not consider each defendant individually or each offense separately. *See Arzola–Amaya,* 867 F.2d at 1516 (jury able to compartmentalize evidence where trial court explicitly instructed jury to consider each offense separately and each defendant individually). Thus, the defendants' desire to be tried separately was not shown to have outweighed considerations of judicial economy, and the defendants have failed to show prejudice. Accordingly, we find that the district court did not abuse its discretion in denying defendants' motions for severance.

## III.

### THE TRANSCRIPTS OF AUDIO RECORDINGS

■ Audio recordings that were made of the undercover drug transactions were

---

**1.** James' sentence of 136 months' imprisonment, Ray's sentence of 188 months' imprisonment, and Featherson's sentence of 135 months' imprisonment were for the drug counts. James

and Featherson were additionally sentenced to 60 months' imprisonment for their convictions relating to possession of a firearm during a drug trafficking offense. *See infra* note 5.

played to the jury, and the district court allowed the jury to use the Government's transcripts of these recordings. James, Ray, and Featherson argue that the district court exceeded its discretion by allowing the jury to use these transcripts of audio proceedings. Specifically, the defendants contend that they did not have the opportunity to review the Government's transcripts, that the transcripts contain many errors, and that the transcripts are generally unreliable. Defendants cite *United States v. Onori*, 535 F.2d 938 (5th Cir.1976) (discussing procedures to be followed where disputed transcripts of tape recordings are involved) as support for their argument.

If the defendants had intended to urge this issue on appeal, then the necessary materials should have been provided to this court. *See* Fed.R.App.P. 10(b)(2) (explaining appellant's burden to assemble the record on appeal); *see also Adams v. Johns–Manville Sales Corp.*, 783 F.2d 589, 592 (5th Cir.1986) (burden of presenting an adequate record on appeal is on the appellant). These tapes and transcripts, however, were not provided with the record so we are unable to review the merits of the defendants' contentions. In any event, the defendants waived their right to complain about the transcripts because they did not move for a recess or a continuance after the transcripts were admitted in the district court. *Cf. United States v. Osorio*, 929 F.2d 753, 758 (1st Cir.1991) (defendant waives claim of prejudice—due to delayed disclosure of impeachment evidence—when he fails to object, file a motion for dismissal, or a motion for continuance).

## IV.

## SUFFICIENCY OF EVIDENCE ISSUES

 In reviewing a challenge to the sufficiency of the evidence in a criminal case, it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with ev-

ery conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *See United States v. Hall*, 845 F.2d 1281, 1283 (5th Cir.), *cert. denied*, 488 U.S. 860, 109 S.Ct. 155, 102 L.Ed.2d 126 (1988) (citation omitted). We review the evidence in the light most favorable to the Government, making all reasonable inferences and credibility choices in favor of the verdict. *See United States v. Evans*, 941 F.2d 267, 271–72 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 451, 116 L.Ed.2d 468 (1991) (citation omitted).

### A. *The 21 U.S.C. § 846 Conspiracy*

 James, Ray, and Featherson separately contest their convictions for conspiracy to distribute cocaine.[2] For the defendants to be convicted of a conspiracy under 21 U.S.C. § 846, the Government must prove beyond a reasonable doubt that: (1) a conspiracy existed, (2) the defendants knew of it, and that, with this knowledge, (3) the defendants voluntarily became a part of the conspiracy. *See United States v. Bland*, 653 F.2d 989, 996 (5th Cir.), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981) (citations omitted). The conspiracy may be inferred from concert of action. *See United States v. Simmons*, 918 F.2d 476, 484 (5th Cir.1990) (citation omitted). One cannot escape criminal liability on the basis that one played a minor role in the total scheme. *See United States v. Davis*, 666 F.2d 195, 201 (5th Cir.1982) (citations omitted). We conclude that the Government has met its burden.

 Ray contends that the evidence merely shows he sold a small amount of cocaine base over a period of time, but that there was no joint cooperation between himself and the other defendants. James argues that the evidence merely shows unrelated transactions—referrals from one defendant to another with no enmeshing pattern. Featherson argues that he had no association with the other defendants and

---

**2.** Count One of the indictment alleged violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution of cocaine base), 21 U.S.C. § 841(b)(1)(A)(iii) (penalty for posses-

sion with intent to distribute and distribution of 50 grams or more of cocaine base), 18 U.S.C. § 2 (principals), and 21 U.S.C. § 846 (conspiracy).

that he was not involved with their drug transactions.

The defendants' arguments are unpersuasive. The evidence at trial showed that James and Ray repeatedly went to the flats where they made multiple crack sales. In September 1989 and October 1989, James sold cocaine base to Ward. In October 1989 James also referred Ward to Ray who sold him cocaine base, and later that month Ray sold more cocaine base to Ward. In January 1990, James was apprehended at an apartment where he was manufacturing cocaine base, and that apartment was in Ray's temporary custody.[3] James and Ray committed other drug offenses, selling crack cocaine and cocaine base to confidential informants. In November 1989, Featherson was found in the possession of crack cocaine in the flats; on March 12, 1990, Ray referred Ward to Featherson, and Featherson gave drugs in a bottle to Ray who sold the drugs to Ward; later, on March 15, Ray referred Ward to Featherson who sold drugs to Ward (Featherson stated that it was "Ray's dope").

In this case the evidence as a whole is sufficient to establish beyond a reasonable doubt that a conspiracy existed, and that each defendant knew of its existence and voluntarily participated in this conspiracy.[4] The evidence shows that the defendants completed multiple drug transactions in the flats, that the defendants communicated with one another and knowingly agreed to engage in the distribution of cocaine base. The evidence at trial clearly established the conspiratorial relationship between James and Ray.

Although the evidence is less overwhelming with respect to Featherson, it is nevertheless persuasive. Featherson had drug-related conversations with Ray, had drug-related contacts with Ray, accepted referrals from Ray and had an apartment in the flats near those frequented by Ray and James. In *United States v. Vergara*, 687 F.2d 57, 60–61 (5th Cir.1982), we noted that while each piece of evidence, standing alone, might have been susceptible to innocent interpretation, when examined in the aggregate, the evidence established Vergara's part in the conspiracy. We also noted that Vergara's conviction would not be reversed because of a minor role in the overall scheme. *Id.* We found that a jury reasonably could have concluded that the evidence establishing that Vergara was also a source of heroin, that coconspirators visited his home, and that Vergara told a coconspirator to take a brown paper bag out of his car which contained heroin, sufficed to establish that Vergara was a culpable member of the conspiracy. *Id.* Looking at the evidence in the light most favorable to the Government, a rational jury could conclude beyond a reasonable doubt

---

3. *See infra* note 6.

4. In *United States v. Juarez–Fierro*, 935 F.2d 672, 676–77 (5th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991), we found sufficient evidence to support a conspiracy conviction where defendant Juarez made arrangements for the transportation of marijuana, directed Government-informant Lopez as to when it should be picked up, arranged for storage of the marijuana, and purchased a vehicle to transport Lopez to another city to complete the deal. We rejected Juarez's contention that he was merely in the company of bad men. *Id.* at 677.

Similarly, in *United States v. Evans*, 941 F.2d 267, 271–72 (5th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 451, 116 L.Ed.2d 468 (1991), we again found sufficient evidence to establish a conspiracy where Lewis was present at several meetings at which Evans and DEA agents discussed the manufacture of drugs, and Lewis knew of the criminal activity at the laboratory site. There was also testimony that Lewis and Evans had agreed to split the drugs that were manufactured. We rejected the contention that Evans and Lewis did not knowingly and voluntarily participate in the conspiracy. *Id.*

Finally, in *United States v. Simmons*, 918 F.2d 476, 483–84 (5th Cir.1990), we found sufficient evidence to establish the existence of a conspiracy to distribute cocaine where the defendants knew each other, exited a plane together, and were found to be carrying nearly identical packages of cocaine. Although the Government produced no direct evidence that Roser and Simmons mutually agreed to violate federal narcotics laws, the fact that the packages of cocaine both men were carrying were identical supported an inference that the drugs were purchased from the same source. *Id.* at 484. We noted that when added to the other circumstances of the case, this circumstance was enough to infer the requisite concert of action. *Id.*

that James, Ray, and Featherson agreed to violate narcotics laws.

### B. *The 18 U.S.C. § 924(c)(1) Convictions*

#### 1. James

James maintains that the district court erred in denying his motion for acquittal on Count Fourteen of the indictment, charging him with a violation of 18 U.S.C. § 924(c)(1).[5] He argues that the Government did no more than prove the proximity between the cocaine base, himself and the named weapon. He also argues that he did not use the firearm.

The Government, however, need not prove an actual use or brandishing of the weapon. *See United States v. Coburn*, 876 F.2d 372, 375 (5th Cir.1989). The Government may meet its burden by showing that the weapon involved could have been used to protect or have the potential of facilitating the operation, and that the presence of the weapon was connected with the drug trafficking. *See United States v. Blake*, 941 F.2d 334, 342–43 (5th Cir.1991) (citation omitted). In *United States v. Beverly*, 921 F.2d 559, 561–63 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2869, 115 L.Ed.2d 1035 (1991), we found that two revolvers and ammunition, located in a safety deposit box under a mattress in a bedroom where cocaine was found and in the apartment that served as the distribution center, were used during and in relation to drug trafficking crimes.

In this case, there is sufficient evidence for a jury to find that James was in the apartment, knew that the gun was under the mattress, and that he could have used the gun to safeguard the narcotics. James was found standing at a table in an apartment in the flats [6]—a table that was covered with large quantities of cocaine hydrochloride, cocaine base, baking soda and razor blades. Approximately six to eight feet from where James was standing, the officers found a loaded .380 caliber semiautomatic pistol under a mattress. During this time, James said to a woman who was with him in the apartment, "Don't say it's mine; don't say it's yours; don't say nothing."

This court has found a conviction under 18 U.S.C. § 924(c)(1) sufficient where the police found loaded weapons and cocaine in a defendant's house. *See United States v. Robinson*, 857 F.2d 1006, 1010 (5th Cir. 1988) (citation omitted). In the case now before us, we find that a reasonable trier of fact could find a connection between the drug conspiracy and the firearm. The evidence is sufficient to support James' conviction on Count Fourteen for use of a firearm in connection with a drug trafficking crime.

#### 2. Featherson

Featherson also argues that his conviction under 18 U.S.C. § 924(c)(1) was not supported by sufficient evidence and that his motion for acquittal should have been granted. We disagree.

On November 19, 1989, after Featherson was stopped by Lubbock police and found with several bundles of cocaine base, Featherson consented to a search of his car. The police found an unloaded .25 semiautomatic pistol under the driver's seat of the car where Featherson had been sitting;[7] a loaded .357 caliber gun and an unloaded .22 revolver in the trunk of his car; and a box of .22 ammunition in the trunk of Featherson's car.

As this court stated in *United States v. Molinar–Apodaca*, 889 F.2d 1417, 1424 (5th Cir.1989) (citations omitted), the Government is only obligated to show that the firearm was available to provide protec-

---

**5.** Section 924(c)(1) provides in pertinent part:

Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

**6.** The apartment was in the custody of James' brother, Ray. Ray had been given a key to the apartment by the apartment's resident, Charles Mackey.

**7.** Ammunition for this pistol was found on Featherson.

tion to the defendant in connection with his engagement in drug trafficking. Because the Government may meet its burden by showing that the weapons could have been used to protect the operation and that the presence of the weapons was connected with the drug trafficking, *see United States v. Blake*, 941 F.2d 334, 342–43 (5th Cir.1991) (citation omitted), we conclude that the weapons, the presence of ammunition, and Featherson's accessibility to the weapons could lead a rational trier of fact to find that the weapons could be used during and in relation to a drug trafficking offense.

## V.

### THE JURY INSTRUCTION REGARDING 18 U.S.C. § 924(c)(1)

 Featherson contends that the district court erred in its jury instruction regarding the firearms offense under 18 U.S.C. § 924(c)(1).[8] The standard of review for jury instructions is usually whether the court's charge, as a whole, is a correct statement of the law and plainly instructs the jurors as to the principles of law applicable to the fact issues confronting them. *See United States v. Chen*, 913 F.2d 183, 186 (5th Cir.1990) (citations omitted). However, in cases such as this one where the defendant did not object to the jury charge at trial, the district court's charge is subject to a plain error standard. *See United States v. Jones*, 673 F.2d 115, 118–19 (5th Cir.), *cert. denied*, 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982); *United States v. Richerson*, 833 F.2d 1147, 1155 (5th Cir. 1987). We therefore review the jury charge to determine if the error was so fundamental as to result in a miscarriage of justice. *Id.*

Featherson argues that the district court improperly instructed the jury that it could consider all three firearms found in his automobile—including the two firearms found in the trunk—to determine whether he used a firearm during a drug trafficking crime. Featherson argues that it was improper for the district court to instruct the jury regarding the two firearms in the trunk because they were not an integral part of the felony. We disagree. Featherson did not object to the instruction at trial so he would have to show error so fundamental as to result in a miscarriage of justice. *See Jones*, 673 F.2d at 118–19; *Richerson*, 833 F.2d at 1155. After reviewing the record, we cannot say that such an exceptional case is before us. Furthermore, because the contested jury instruction is not in the record, Featherson has waived his argument concerning the jury instruction. *See United States v. Baker*, 611 F.2d 964, 968 n.4 (4th Cir.1979).

## VI.

### CONCLUSION

Accordingly, we AFFIRM.

---

**8.** The district court's jury charge is not included in the record nor is it in the briefs. The burden of presenting an adequate record on appeal is on the appellant. *See* Fed.R.App.P. 10(b)(2).