# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 92-8030
_____

### UNITED STATES OF AMERICA,

**Plaintiff-Appellee,**

**versus**

### FREDERICK BRANCH, and KEVIN JOE HILL, a/k/a Dominique Hill, GLORIA SHERMAN, and ANDRE THOMPSON,

**Defendants-Appellants.**

_____

Appeals from the United States District Court
for the Western District of Texas
_____

(April 14, 1993)

Before WILLIAMS, REYNALDO G. GARZA, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This is an appeal from a drug trafficking case in which defendants Branch, Hill, Sherman and Thompson were charged with a conspiracy to sell cocaine in Midland, Texas, and related offenses.[1] Having been convicted after a jury trial and received lengthy sentences, they appealed to this court.

---

[1] Count One charged appellants and others with conspiracy to possess with intent to distribute over 50 grams of cocaine base. Count Two charged the same defendants with aiding and abetting possession with intent to distribute. Count Three charged Jimmy Sherman with possession with intent to distribute 49.18 grams of cocaine base. Count Four charged Thompson and Jimmy Sherman with use of a communication facility to further a drug crime. Count Five charged Branch with using and carrying a firearm in relation to illegal drug trafficking.

All of the appellants argue that a <u>Batson</u> error occurred in the selection of the jury.  Thompson additionally contends that the jury instructions suffered from plain error, while Sherman contests sufficiency of the evidence and the denial of her motion for severance.  We find merit in none of these claims and affirm the judgments of conviction.

## BACKGROUND

Jimmy Sherman, the primary government witness, testified that he began to sell crack cocaine for appellant Branch in Midland, Texas in April, 1991.  On June 13, 1991, during a drug selling trip to Midland, Jimmy Sherman was arrested and sought assistance from the police after having been in jail for a month.  Eventually he was bailed out by Branch but continued to cooperate with the government.

Branch's group was arrested during an August 9 sales trip to Midland.  Branch, Jimmy Sherman and his family, Hill, Hill's wife Gloria Sherman (no relation to Jimmy) and their child drove to Midland, where they registered under Gloria Sherman's name in separate hotels, renting rooms paid for by Branch.

The following day Jimmy Sherman and Thompson went out to find buyers for their drugs.  After making some sales, Jimmy Sherman returned to the Metro Inn to see his wife.  At this point, Branch arrived saying he believed they were being watched by the police at the Royal Inn, and he told other members of the group to retrieve the drugs and gun out of Branch's room at the Royal Inn.  While Sherman was doing this, the police saw and followed him.  A

2

car chase ensued, and after further pursuit, the police caught and arrested Branch, Hill and Thompson, who had tried to rescue Jimmy Sherman.

Back at the Royal Inn, a police officer obtained written consent to search Gloria Sherman's room, which she was sharing with her "husband" Hill and their child. When her room was searched, a red diaper bag with her name on its tag was found in the closet. The bag contained a package of sanitary napkins in which crack cocaine was concealed. The government asserted at trial that Gloria Sherman and her family were being used as a ploy to make the alleged drug transaction look like a family vacation. Gloria Sherman claimed that the sanitary napkins were not hers but had been left there by another person. At trial, Jimmy Sherman testified that Gloria Sherman was just with them on the sales trip.

## I.

### THE BATSON CLAIMS

Among the venirepersons there were two black prospective jurors. The state stuck one of them with a peremptory challenge, leaving the other on the actual jury panel. At the close of voir dire, defense counsel urged that the jury panel was invalidly constituted under Batson v. Kentucky, stating:

> Your honor, we want to challenge the composition of the jury under Batson v. Kentucky and would ask the court to take judicial notice that all of our clients are members of a cognizable race or group, that of the Afro American. The two members of the jury panel, number 21, Miss Green, and number 24, Mr. Miller, are members of the same racial group. The government exercised its peremptory challenge on Miss Green, but it

3

left Mr. Miller; but we object to the exclusion of Miss Green under <u>Batson v. Kentucky</u>, Your Honor.

The court responded, "I don't think you have the absolute right to have every black on the panel sit on the jury."

This statement seems to be a finding that appellants did not make a prima facie case of discrimination under <u>Batson</u>, and as such, it is reviewed for clear error. <u>United States v. Matha</u>, 915 F.2d 1220, 1222 (8th Cir. 1990).

We do not find clear error in the denial of appellants' motion. For a <u>Batson</u> claim to go forward, the defendant has the burden of establishing a prima facie case of discrimination by the prosecutor in the exercise of peremptory strikes. <u>Batson</u>, 476 U.S. 79, 93, 97, 106 S. Ct. 1712, 1721-23, 90 L.Ed.2d 69 (1986); <u>Moore v. Keller Industries</u>, 948 F.2d 199, 201 (5th Cir. 1991), <u>cert. denied</u>, ____ U.S. ____, 112 S. Ct. 1945, 118 L.Ed.2d 550 (1992); <u>United States v. Roberts</u>, 913 F.2d 211, 214 (5th Cir. 1990). A prima facie case of racial discrimination requires a defendant to "come forward with facts, not just numbers alone." <u>United States v. Moore</u>, 895 F.2d 484, 485 (8th Cir. 1990). <u>Batson</u> suggested some factors that might give rise to a prima facie case: a "pattern" of strikes; the nature of questions asked by the prosecutor during voir dire; the prosecutor's statements during voir dire. 476 U.S. 96-97, 106 S. Ct. _____. Only when a prima facie case of discrimination has been made must the court ask for and evaluate the prosecutor's grounds for exercising peremptory strikes.

4

In this case the appellants' brief objection did not make a prima facie <u>Batson</u> case.[2]  Where the only evidence proffered by the defendant is that a black prospective juror was struck, a prima facie <u>Batson</u> claim does not arise.  <u>United States v. Lane</u>, 866 F.2d 103, 105 (4th Cir. 1989) ("this does not mean that a prima facie case of discrimination arises every time a prosecutor strikes a black prospective juror"); <u>United States v. Ingram</u>, 839 F.2d 1327, 1329 (8th Cir. 1988); <u>United States v. Lewis</u>, 837 F.2d 415, 416 (9th Cir. 1988), <u>cert. denied</u>, 488 U.S. 923, 109 S. Ct. 304, 102 L.Ed.2d 323 (1988) (finding no <u>Batson</u> error when one of two black venirepersons was struck).  The racially discriminatory striking of even one minority juror will violate <u>Batson</u>, but a defendant must prove discrimination by more than the sole fact that the minority venire-person was struck by peremptory challenge.

While the district court could have expressed more clearly his finding that no prima facie <u>Batson</u> claim had been asserted, that finding is by no means clearly erroneous.

## II.

### CONTENTIONS OF GLORIA SHERMAN

Appellant Gloria Sherman asserts that she was entitled to a severance from the other defendants because she was only charged with two of the five counts set forth in the indictment and that

---

[2]  On appeal, appellants have noted facts in alleged support of their <u>Batson</u> claim.  We may not consider them.  Not only does the failure to enunciate these facts in the district court amount to a waiver, but this court has repeatedly held that to be cognizable, a <u>Batson</u> claim must be timely and properly raised in the trial court.  <u>United States v. Erwin</u>, 793 F.2d 656, 667 (5th Cir. 1986).

trying her with members of the conspiracy who were charged with more crimes materially prejudiced her.

The general rule is that defendants who are indicted together should be tried together. Zafiro v. United States, ____ U.S. ____, 113 S. Ct. 933, 937, 122 L.Ed.2d 317 (1993). In Zafiro the Court outlined the broad discretion given to district courts to examine motions for severance made by criminal defendants. Id. The Court held that when defendants have, as here, been properly joined for trial, a severance is warranted only to avert "serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making reliable judgments about guilt or innocence." 113 S. Ct. at 938. The court stated that even if prejudice existed it generally should be cured through jury instructions. Id. The court also sought specificity in the claims of prejudice.

Measured by Zafiro, the district court's refusal to sever Sherman was not an abuse of discretion. She asserts that because the counts in which she was indicted are "unrelated" to those for which she was not indicted, she was prejudiced. This statement is conclusory and contrary to the facts; the indictment dealt with one specific set of events in Midland, Texas on August 9 and 10. In any event, the trial court's limiting instructions reminded the jury to judge each co-defendant individually and alleviated any risk of prejudice in this case. Zafiro, 113 S. Ct. at 938-39.

Sherman next contends that there was insufficient evidence to support her convictions for conspiracy and aiding and

abetting the possession of cocaine base.  She claims she had no knowledge of the other defendants' activities or that cocaine was in her diaper bag.  The evidence suggested, however, that she was a member of the conspiracy who had crack cocaine in her possession; that she and her family were used as a cover for drug distribution activities; and that she rented multiple hotel rooms in her name-- on two occasions--to further those activities.  Because decisions about the credibility of testimony are in the providence of the jury, we review both the evidence and the inferences drawn from the evidence in the light most favorable to the government.  Glasser v. United States, 315 U.S. 60, 70, 80, 62 S. Ct. 457, 468, 469, 86 L.Ed.2d 680 (1942); United States v. Lopez, 979 F.2d 1024, 1028 (5th Cir. 1992).  In this case there was ample evidence from which the jury could infer that Gloria Sherman was guilty on both counts of conviction.  We need not belabor the point by further discussion.

### III.

### THOMPSON

Appellant Thompson objects to the alleged absence of a jury instruction regarding the voluntariness of his joining a conspiracy.  Thompson contends that because he was afraid of Branch and owed him money, he did not voluntarily join the conspiracy.  He asserts that the court did not give a specific instruction

7

requiring the jury to find that Thompson voluntarily joined the conspiracy.[3]

Since this objection was not made at trial, we may review only for plain error. United States v. Jones, 673 F.2d 115, 118-19 (5th Cir.), cert. denied, 559 U.S. 863, 103 S. Ct. 1040, 74 L.Ed.2d 119 (1982); United States v. Featherston, 949 F.2d 770, 777 (5th Cir. 1991), cert. denied, ____ U.S. ____, 112 S. Ct. 1771, 118 L.Ed.2d 430 (1992). We therefore review the jury charge to determine if the error was so fundamental as to result in the miscarriage of justice. Featherston, 949 F.2d at 777; Jones, 673 F.2d at 118-19.

In his jury charge, the court mentioned no less than three times that the acts making up the charged offenses must be done voluntarily, and it said that "knowingly" participating in the defendant's crimes meant that acts were committed "voluntarily," and not because of mistake, accident "or other innocent reason". In essence, the omitted instruction would add nothing more, so an additional instruction on the voluntariness of Thompson's participation in the conspiracy was not necessary. See United States v. Gunter, 876 F.2d 1113, 1119 (5th Cir. 1989), cert. denied, 493 U.S. 871, 110 S. Ct. 198, 107 L.Ed.2d 152 (1989); United States v. Arditti, 955 F.2d 331, 339 (5th Cir. 1992), cert. denied, ____ U.S. ____, 113 S. Ct. 597, 121 L.Ed.2d 534 (1992).

---

[3] Thompson's notice of appeal was filed untimely, but within the period allowed for an extension of time. F. Rule App. Proc. 4(b). This court therefore remanded for a finding of excusable neglect, which the district court made.

8

The omission of this charge did not rise to plain error.  <u>United States v. Royal</u>, 972 F.2d 643, 648 (5th Cir. 1992), <u>cert. denied</u>, \_\_\_\_ S. Ct. \_\_\_\_, 61 U.S.L.W. 3471 (1993).

## IV.

As we find no reversible error, the convictions are **AFFIRMED**.