# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 6, 2010

No. 09-50114

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

R.N. PETE HOLLOWAY

Defendant-Appellant

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:08-CR-73-7

---

Before GARWOOD, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant R.N. Pete Holloway was convicted by a jury of conspiracy to possess with intent to distribute more than fifty grams of cocaine base.[1]  21 U.S.C. §§ 841 & 846 (2006).  Appellant's principal argument on appeal is that there was insufficient evidence to prove beyond a reasonable doubt that he conspired with others to distribute cocaine base.  Finding the evidence

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Cocaine base is also known as "crack cocaine."

No. 09-50114

insufficient to sustain the conspiracy conviction, we reverse the district court's decision denying the motion for judgment of acquittal.

## I. BACKGROUND

In 2007, Midland Police Department (MPD) Detectives Matt Davis and Ed Marker began investigating a crack cocaine ring by utilizing informants and controlled drug buys.[2] At that time, James Howard was the leader of an organization that distributed crack cocaine in Midland, Texas. Dodionne Watson was Howard's girlfriend and distributed crack cocaine for him. After several controlled drug buys were made from Howard and Watson, police obtained a search warrant for Howard's residence and discovered the "largest amount" of crack cocaine that Detective Davis had ever seen.

The investigation revealed that Howard and Watson supplied crack cocaine to James Lee, James Warren, Corey Mitchell, Rachel Reese, Jeff Roberson, Richard Shelton, and Appellant. These individuals sold varying amounts of crack cocaine in Midland, near the intersection of Illinois and Lee Streets. This area, near "Billy Gordon's" or "BG's restaurant" and a cab stand, was called "the Flats," which was known for its high volume of crack cocaine trafficking.

On April 23, 2008, a federal grand jury returned an indictment charging Appellant with a single count of conspiring to possess with intent to distribute

---

[2] Detective Davis testified that a "controlled buy" occurs when a confidential informant wears a recording device and the police "maintain constant surveillance of this individual as they make a purchase from the target."

fifty or more grams of cocaine base in violation of §§ 841 & 846.[3]  Appellant and Tamara Royals, who was charged with conspiracy in a separate indictment, were tried by a jury.  The jury found Appellant guilty as charged but found Royals not guilty.  The district court sentenced Appellant to life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A)(iii).  He now appeals.

## II.      SUFFICIENCY OF THE EVIDENCE

Appellant argues that the evidence was insufficient to support his conviction for conspiracy to distribute cocaine base under § 846.  Specifically, he contends that the evidence was insufficient to show the existence of an "agreement" with respect to the distribution of cocaine base.  Appellant avers that although witnesses testified that they saw him selling drugs, none of the witnesses "testified regarding any agreement they had to sell crack with [him], and not one testified about any agreement that [he] had with any other person in this regard."  He further contends that no evidence was adduced showing that he "purchased or sold large amounts of crack, which would indicate knowledge among any parties involved that the crack [he] was buying was intended for distribution."  Rather, Appellant maintains that the evidence merely reflected "purchases of crack cocaine in personal use quantities with the occasional reselling of unused portions," for which he "made a few dollars."  He contends that such evidence is insufficient to support a conviction under § 846.

To convict Appellant under § 846, "the government must prove: 1) the existence of an agreement between two or more persons to violate federal

---

[3]  The indictment charged that Appellant conspired with Warren, Shelton, Reese, Cottrell, and "other persons known and unknown to the grand jury" to possess with intent to distribute cocaine base.

No. 09-50114

narcotics laws; 2) the defendant's knowledge of the agreement; and 3) the defendant's voluntary participation in the agreement." *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir. 1996). "A conspiracy agreement may be tacit, and the trier of fact may infer an agreement from circumstantial evidence." *United States v. Inocencio*, 40 F.3d 716, 725 (5th Cir. 1994) (internal quotation marks and citations omitted). "A defendant may be convicted on the uncorroborated testimony of a co-conspirator who has accepted a plea bargain unless the coconspirator's testimony is incredible." *United States v. Booker*, 334 F.3d 406, 410 (5th Cir. 2003). A jury may also consider factors such as "concert of action" and presence among, or association with, coconspirators. *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994) (internal quotation marks and citations omitted). "A jury may find knowledgeable, voluntary participation from presence when it would be unreasonable for anyone other than a knowledgeable participant to be present." *United States v. Martinez*, 190 F.3d 673, 676 (5th Cir. 1999). However, mere presence or association alone are not sufficient to support a conspiracy conviction. *See United States v. Brito*, 136 F.3d 397, 409 (5th Cir. 1998).

Because Appellant made a motion for judgment of acquittal at the close of the government's case, the standard of review is whether "a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996). This Court considers "the evidence, all reasonable inferences drawn therefrom, and all credibility determinations in the light most favorable to the prosecution." *Id.* This Court does not weigh the evidence or assess the credibility of witnesses. *Id.* "The evidence need not exclude every reasonable

4

No. 09-50114

hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *Id.*

We now review the witnesses' trial testimony. The government's first witness was Detective Davis. Davis testified that during their investigation they did not attempt to make a controlled buy from Appellant. Indeed, Davis admitted on cross-examination that he did not know Appellant. The government's next witness, James Lee, who was serving a 188-month sentence for distributing crack cocaine, never mentioned Appellant in his testimony.

The government also called Warren, a codefendant in the same indictment with Appellant, who had previously pleaded guilty to the instant conspiracy charge. Warren testified that on a typical day he would obtain "15 quarters" from Howard and sell them in the Flats. He also testified that he once sold a quarter ounce of crack[4] to Appellant but he did not know what Appellant did with the cocaine.

MPD Lieutenant Seth Hermann testified that many drug dealers are also drug users who sell crack to support their own habit. However, Hermann did not mention Appellant in his testimony. The next witness, Corey Mitchell, who had previously pleaded guilty to conspiring to distribute crack cocaine, did not mention Appellant.

MPD Officer Dolan testified that the MPD worked with DEA agents. On one occasion, DEA Agent Conan Becknell interviewed Appellant while Dolan was present. During this interview, Appellant admitted that he purchased small

---

[4] Quarter ounces of crack cocaine are sometimes referred to as "quarters."

5

amounts of crack cocaine approximately five times from Watson in 2007. Appellant told them he was using crack cocaine but he would sometimes "make a few dollars off of it." Watson never told Appellant where she obtained the crack cocaine. However, he later heard that Watson was working with Warren and Howard, the leader of the crack distribution ring.

Elvin Mackey, who was serving a sentence for conspiring to sell cocaine, testified that although he observed Appellant selling crack cocaine, Appellant was "no big-time drug dealer. It was, like, maybe once a month." Mackey, however, was an "everyday person." Mackey also testified the younger dealers "compete with each other" and that the older dealers, including Appellant, take turns selling crack cocaine to the buyers on the street.

Rachel Reese had previously pleaded guilty to distributing crack cocaine and was awaiting sentencing. Reese testified that she typically received a quarter ounce of crack cocaine once or twice per week from Howard. Reese also testified that she bought crack cocaine from Appellant during the relevant time period. She was a crack cocaine addict and admitted that she was in the Flats five to seven days a week. In contrast to Mackey's estimate, she testified that she observed Appellant conducting transactions "[m]aybe two, three times a week."

Jeffrey Roberson, who had pleaded guilty to distributing crack cocaine, testified that he bought crack cocaine from Howard about two times a month. Roberson never mentioned Appellant in his testimony.

Richard Shelton was charged as a codefendant in the same indictment with Appellant and had previously pleaded guilty to the conspiracy charge. Shelton testified that he sold crack cocaine for Howard in the Flats. Shelton

further testified that he observed Appellant buy crack cocaine from Watson on two occasions.  Although he did not observe Appellant hand her any money, he knew that Watson did not "front dope."  Shelton never observed Appellant selling drugs.

Detective Marker testified that he interviewed Watson during his investigation of this case.  During this interview, Watson stated that she sold Appellant crack cocaine a quarter ounce at a time.  Watson further stated "it was not very often" that she sold crack cocaine to Appellant.  Detective Marker testified that during his investigation he never encountered anyone who had bought drugs from Appellant.

On appeal, Appellant admits that he purchased "personal use" quantities of crack cocaine and that he used some of the crack cocaine and resold some. Nonetheless, he contends that there is insufficient evidence to prove beyond a reasonable doubt that he conspired with anyone to distribute drugs.  We agree.

Although direct evidence of an agreement is not required, there must be some evidence to support the charge of conspiracy.   *See Inocencio*, 40 F.3d at 725.  For example, evidence that a defendant purchased drugs on consignment would provide "'strong evidence' of membership in a conspiracy because it indicates a strong level of trust and an ongoing, mutually dependent relationship." *United States v. Posada-Rios*, 158 F.3d 832, 860 (5th Cir. 1998). Here, however, there is no evidence that Appellant purchased drugs on consignment.

Additionally, we have stated that evidence may be sufficient to prove a conspiracy to distribute drugs if it demonstrates that the seller knows that the buyer will resell the drug purchases, "especially when each party has a stake in

the success of the other's business, suggesting a substantial degree of cooperation and partnership rather than a series of isolated and sporadic transactions." *United States v. Casel*, 995 F.2d 1299, 1306 (5th Cir. 1993) (internal quotation marks and citation omitted). In the case before us, the evidence does not demonstrate that the individuals who sold drugs to Appellant knew that he would resell the drugs. Watson, who distributed drugs for Howard, the leader of the drug ring, told police it was "not very often" that she sold crack cocaine to Watson. Watson further told the police that she sold Appellant only a quarter ounce of crack cocaine at a time, which, according to trial testimony, is consistent with personal use of the drug. On one occasion, Appellant bought a quarter ounce from Warren, who testified that he did not know what Appellant did with the cocaine. We are not aware of any evidence demonstrating that the individuals who sold drugs to Appellant knew the drugs were to be resold.

Further, the government may prove an agreement by demonstrating the coconspirators' concert of action with respect to distribution of drugs. *United States v. Mitchell*, 484 F.3d 762, 769 (5th Cir. 2007). In *Mitchell*, this Court rejected the contention that the evidence merely demonstrated that "there were numerous buyer[-]seller relationships, not that there was a conspiracy." *Id.* There, the defendants agreed to: (1) purchase crack cocaine together for distribution; (2) drive to Dallas together; and (3) "have [a co-conspirator] conduct the transaction . . . on behalf of all three of them." *Id.* They also "agreed on a method of transporting the drugs . . . for distribution." *Id.* Based on the evidence of the defendants' concert of action, we held that the jury could have inferred that the defendants had an agreement to distribute drugs. *Id.* In the

No. 09-50114

case at bar, the evidence does not demonstrate that Appellant acted in concert with other drug dealers.

The government argues that Mackey's testimony that the older drug dealers had an understanding because they "took turns" selling on the street demonstrates evidence of concert of action and suggests substantial cooperation. In support of this argument, the government cites *United States v. Featherson,* 949 F.2d 770 (5th Cir. 1991). Similar to the instant case, the defendant in *Featherson* argued that he "had no association with the other defendants and that he was not involved with their drug transactions." *Id.* at 774-75. We rejected his argument, stating as follows: "Featherson had drug-related conversations with [codefendant] Ray, had drug-related contacts with Ray, accepted referrals from Ray and had an apartment . . . near those frequented by [his codefendants]." *Id.* at 775. We acknowledged that the evidence was "less overwhelming" compared to the evidence against Featherson's codefendants but we nonetheless found it sufficient. *Id.*

Here, in contrast, there is insufficient evidence of any concert of action between Appellant and any co-conspirator with respect to distributing crack cocaine—other than a buyer-seller relationship, which, "by itself, is insufficient to show conspiratorial activity." *Posada-Rios*, 158 F.3d at 860. We conclude that Mackey's testimony with respect to the drug dealers' implicit agreement to take turns selling drugs merely demonstrates "conscious parallelism," which is insufficient to establish a conspiracy in a civil case. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 548–49, 553–54 (2007) (holding that an allegation of conscious parallelism or parallel business conduct, without factual allegations "suggesting agreement," does not state a claim with respect to antitrust

9

No. 09-50114

conspiracy); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 961 F.2d 1148, 1158–59 (5th Cir. 1992) (explaining that mere proof of "conscious parallelism" or parallel business behavior is insufficient to prevail on a claim for antitrust conspiracy).

Finally, we have found insufficient evidence of a conspiracy to distribute drugs when the evidence showed that a married couple sold drugs separately to a confidential informant. *United States v. White*, 569 F.2d 263, 267 (5th Cir. 1978). We opined that the "bits and pieces of evidence" were no more than speculation of a conspiracy, explaining that "[d]rug transactions alone do not constitute a conspiracy." *Id.* at 267, 268. *See also United States v. Villasenor*, 894 F.2d 1422, 1425–30 (5th Cir. 1990) (explaining that, although the evidence was sufficient to sustain the conviction for possession with intent to distribute drugs, the conviction for conspiracy must be reversed because the evidence did not establish an agreement with any co-conspirators). Similarly, in the instant case, we conclude that the evidence does not prove beyond a reasonable doubt that Appellant had an agreement with any other person to distribute crack cocaine. Although the evidence was sufficient to convict Appellant of possession with intent to distribute cocaine, the government obtained Appellant's conviction based on a conspiracy charge. Accordingly, we reverse Appellant's conviction based on insufficient evidence to sustain his conspiracy conviction.[5]

For the above reasons, the conviction is REVERSED and judgment of acquittal is RENDERED.

---

[5] Appellant raises other issues; we decline to address them in light our holding that the evidence is insufficient to sustain his conviction.