# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 5, 2010

No. 09-70031

Lyle W. Cayce
Clerk

WARREN DARRELL RIVERS,

Petitioner - Appellee Cross-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:07-cv-02968

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The State appeals the district court's grant of habeas relief to Warren Darrell Rivers granting him a new sentencing trial. For his part, Rivers seeks a certificate of appealability ("COA") regarding the district court's denial of habeas relief as to his conviction based upon his contention that the jury selection in his original trial violated *Batson v. Kentucky*, 476 U.S. 79 (1986). We

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-70031

AFFIRM the district court's decision to grant habeas relief as to the sentencing phase and DENY Rivers's request for a COA.

## I.  Background

Following a jury trial in Harris County, Texas, Rivers was convicted of the gruesome murder of a young boy in 1988 and sentenced to death.  Following presentation of evidence at the trial's punishment phase, the jury answered "yes" to the following special issues:

(1) "Was the conduct of the defendant, Warren Darrell Rivers, that caused  the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?"

(2) "Is there a probability that the defendant, Warren Darrell Rivers, would commit criminal acts of violence that would constitute a continuing threat to society?"

Rivers immediately appealed his conviction and sentence, and the Texas Court of Criminal Appeals ("TCCA") affirmed his conviction and sentence in 1993. Rivers then sought state habeas relief, alleging, among other things, that the state prosecutor had used peremptory strikes in violation of *Batson* and that the special issues used in the sentencing phase of his trial were unconstitutional under *Penry v. Lynaugh*, 492 U.S. 302 (1989) (*Penry I*).

The TCCA denied Rivers's claim for habeas relief in 2002.  Rivers then sought federal habeas relief in the district court below.  Following further proceedings not at issue here, the district court considered two claims: (1) Rivers's challenge to his conviction based upon alleged *Batson* violations; and (2) Rivers's challenge to his death sentence based upon alleged *Penry I* violations. The district court granted relief on the latter, but denied relief on the former. The State appealed the *Penry I* determination, while Rivers seeks to appeal the *Batson* determination.  We address each issue in turn.

No. 09-70031

## II.  Standard of Review

In a habeas corpus appeal, we apply "the same standard of review to the state court's decision as the district court." *Thompson v. Cain*, 161 F.3d 802, 805 (5th Cir. 1998).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which governs this case, a federal court may not grant habeas relief on a claim that a state court has adjudicated on the merits "unless the state decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, or if the state court's determination of facts was unreasonable in light of the evidence." *Id*.

## III.  Discussion

### A.  *Penry* Ruling

The State concedes that the jury charge in question violates *Penry I*. However, the State argues that *Penry I* violations are subject to a harmless error analysis "like all jury charge error."  The State further argues that, given the ample evidence of Rivers's propensity for violence and the horrific facts of this case, any error in charging the jury on its consideration of mitigating evidence is harmless and should not result in a new sentencing trial.

As the State concedes, we have previously decided this question. *Nelson v. Quarterman*, 472 F.3d 287, 314 (5th Cir. 2006) (en banc) ("[W]e reject the State's argument that any *Penry* error in this case is subject to harmless-error analysis . . . .").  This panel is bound by this en banc determination of our court. *See United States v. Eastland*, 989 F.2d 760, 768 n.16 (5th Cir. 1993). Accordingly, we reject the State's invitation to contravene binding precedent by engaging in a harmless error review of the *Penry I* error.  The district court correctly granted habeas relief as to Rivers's sentence.

### B.  *Batson* Ruling

To obtain a COA, Rivers must "demonstrate that reasonable jurists would find [that] the district court's assessment of [his *Batson* claim was] debatable or

wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In deciding whether to grant Rivers a COA, the court must view Rivers's "arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254[]." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000). Under § 2254, factual findings by a state court have a presumption of correctness, and the presumption can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The TCCA denied Rivers's *Batson* claim because it found that Rivers had failed to establish a prima facie case under *Batson*. A "state court's determination that [a petitioner] failed to make a *prima facie* showing is a factual finding" that is accorded a presumption of correctness under § 2254(e)(1). *Soria v. Johnson*, 207 F.3d 232, 238 (5th Cir. 2000). The district court found that Rivers failed to overcome § 2254(e)(1)'s presumption of correctness and denied Rivers's *Batson* claim.

Rivers argues that the district court's determination was debatable or wrong because he established a prima facie case by showing that he was tried by an all-white jury after the state prosecutor used three of fifteen available[1] peremptory strikes to remove three African-Americans who were the subject of individual voir dire questioning.[2]

To establish a prima facie case under *Batson*, a petitioner must rely on more than the number of strikes used by a prosecutor to excuse minority members of the jury pool, because the "number of strikes used to excuse minority . . . jury pool members is irrelevant on its own." *Medellin v. Dretke*, 371 F.3d 270, 278-79 (5th Cir. 2004). For the number of strikes to be relevant, a

---

[1] The prosecution actually used only eight total strikes, three of which were for African-American venire members. The defense struck four African-American venire members for cause and a number of other African-American venire members were excused by agreement. Rivers does not discuss the order in which the African-American venire members were removed from the jury pool.

[2] Rivers asserts that the three African-Americans struck by the state prosecutor were the only African-Americans subject to voir dire questioning. The state record, however, shows that a number of other African-Americans were also subject to voir dire questioning.

petitioner must present additional evidence from which the court can infer that the strikes were used in a discriminatory manner. For example, he can "present[] evidence of the racial . . . make-up of the entire jury pool." *See id.* at 278-79; *Lewis v. Horn*, 581 F.3d 92, 104 (3d Cir. 2009) ("Without information about the number and racial composition of the entire venire, we cannot calculate the exclusion rate and we lack the 'contextual markers' to analyze the significance of the strike rate. Thus, [the strike rate, as well as the fact that the jury was all-white,] is insufficient information to establish a prima facie case . . . ."), *petition for cert. filed*, (May 6, 2010) (No. 09-10741). Alternatively, he can present evidence showing that race was an issue in his case. *See Price v. Cain*, 560 F.3d 284, 287 (5th Cir. 2009) (finding that a petitioner had carried his burden under *Batson* when race was an issue and the prosecutor had used six preemptory strikes on African Americans, resulting in an all-white jury).

Here, to establish a prima facie case, Rivers relies solely on the fact that the prosecution struck three African-American potential jurors and that his jury contained no African-Americans.[3] Without more, the evidence relied upon by Rivers does not make debatable the district court's refusal to grant relief as to the state court's determination that no prima facie case was made.[4]

---

[3] Rivers relies heavily on *Johnson v. California*, 545 U.S. 162 (2005) to support his argument that he established a prima facie case. *Johnson*, however, is distinguishable. The defendant in *Johnson* did not rely solely on the number of strikes used, as Rivers does here. In *Johnson*, the defendant also showed the following: (1) that the state prosecutor had used his strikes to remove all the eligible African-American members of the jury pool; and (2) that race was an issue in his case. *Id.* at 164, 167. As stated earlier, Rivers failed to provide any information about the jury pool, and he does not allege that race was an issue in his case. To the contrary, as the State pointed out, most of the participants in Rivers's case on both sides of the matter are African-American, including the victim and the defendant. In sum, *Johnson* does not support Rivers's assertion that he established a prima facie case.

[4] Arguing that such a prima facie showing was made, Rivers then attacks the failure of the prosecution to proffer a race neutral reason for the strikes. However, when the prosecution sought to offer such a reason at trial in order to make a complete record, Rivers's counsel objected. The state court's determination that this objection constituted a waiver of the *Batson* challenge provides another ground for denying the COA. Further, Rivers's own

No. 09-70031

We conclude that jurists of reason would not debate the district court's well-reasoned decision:

> Rivers' showing in the [state] trial court did not go farther than showing that the prosecution used its peremptory strikes against three minority prospective jurors. Rivers showed the race of the stricken jurors without making any credible allegation that they were stricken *on account of their race. . . .*
>
> In essence, the defense asked the trial court to find that a prima facie case did not require an inference of purposeful discrimination, it only required identification of jurors' racial identity. A defendant's burden under *Batson*'s first step is not so light that the defense can disclaim any discriminatory motive[5] and still force inquiry into the second step. *Batson* requires a defendant to show "'more than the bare fact that the minority venire-person was struck by peremptory challenge.'" *Soria*, 270 F.3d at 239 (quoting *United States v. Branch*, 989 F.2d 725, 755 (5th Cir. 1993)). "Where the only evidence is that a black prospective juror was struck, a prima facie *Batson* claim does not arise. *Branch*, 989 F.2d at 755; *see also United States v. Wolk*, 337 F.3d 997, 1007 (8th Cir. 2003) ("The mere recitation of the fact that black jurors were struck from the jury cannot alone establish a prima facie case.").

*Rivers v. Thaler*, No. 4:07-cv-02968, slip op. at 31-32 (S.D. Tex. Sept. 30, 2009). Accordingly, we conclude that a COA should be denied.

### IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of habeas relief as to Rivers's sentence; we DENY a COA as to his challenge to his conviction based upon alleged *Batson* violations.

---

counsel testified that he would have stricken these same prospective jurors if he had been the prosecutor, thus casting doubt on the propriety of this challenge.

[5] It is noteworthy that *defense* counsel testified during the *Batson* hearing that there were race-neutral reasons that could support all three strikes.